## 27906. HALL v. GEORGIA MILK PRODUCERS CONFEDERATION.

DECIDED FEBRUARY 15, 1940.

*Thomas L. Slappey,* for plaintiff.
*Morgan Belser, Philip Etheridge,* for defendant.

STEPHENS, P. J. Mrs. Barbara Hall, an employee of the Georgia Milk Producers Confederation, filed a claim for compensation with the Industrial Board for an injury received by her arising out of and in the course of her employment. At the hearing before the single director the confederation objected to the jurisdiction of the Industrial Board, and contended that under the terms of the coöperative marketing act it was a non-profit corporation and not subject to the provisions of the workmen's compensation law. The director found as a matter of law "that the Georgia Milk Producers Confederation is an association or corporation engaged in a business operated for gain or profit and . . comes within the provisions of the Georgia workmen's compensation act," and thereupon entered a final award in favor of the claimant. The employer appealed to Fulton superior court where the award was reversed and set aside, the court finding as follows: "Under the undisputed evidence in this case the Georgia Milk Producers Confederation was organized and operated not to make profits for the confederation, or its stock members as such, but for its members as producers only (Code, § 65-201), and therefore such confederation is not under the workmen's compensation law engaged in a business operated for gain or profit as contemplated by said compensation law (Code, § 114-101). Hence, the judgment of the Industrial Commission complained of herein is in error and the same is vacated, annulled, and hereby reversed and set aside." The claimant excepted.

It appeared from the evidence that the Georgia Milk Producers Confederation is an association or corporation organized and existing under the law of this State found in the coöperative marketing act of 1921, supra; that the confederation is composed of around 120 stockholders who ship milk to the confederation, that the confederation does not buy the milk from any producer but only receives the milk of its members who are producers of milk on farms; that when the milk is received it is pasteurized and processed and then sent to retail stores for sale to ultimate consumers; that the milk is not purchased from the members; that it is their milk; that the milk is sold to none other than the ultimate consumers; that the proceeds derived from the sale of this milk, less the operating expenses, go back to the stockholder members who produced the milk; that the proceeds go back to them twice a month, but there is really one final settlement, and that is once a month; that these proceeds go back to the producers on a pro-rata basis, based on the amount of milk they ship in, that is, "the operating expense that is used for the overhead in pasteurizing and processing the milk;" that the member producers agree that the operating expense may be deducted; that if at the end of a period, a year or any other stated period, the confederation finds it has not consumed all of that deductible amount in operating expenses, the surplus goes to the member stockholders in the form of cash dividends or stock dividends; that the proceeds of all milk are sent back to the producers less that part they agreed on for expenses; that included in operating expenses are employees' wages, rent, manufacturing cost, or whatever it might be; that the board of directors is elected by the stockholders once a year; that no one belongs to the board who is not a bona fide member of the confederation and a shipper and producer of milk; and that when a person joins the confederation he is required to take out one share, at least, of stock of the value of ten dollars a share, and it then is determined "later on at the end of the year on a pro-rata basis according to the amount, richness, and everything else that his milk might be."

An "'Employer' [as used in the workmen's compensation act] shall include . . any individual, firm, association or corporation engaged in any business operated for gain or profit" (Code, § 114-101), having regularly in his or its employ the required number of persons, and not exempt under the provisions of Code, §

114-107. It has been held that an agricultural society not organized for profit does not fall within the act. See 71 C. J. 387; Finkell v. Cobleskill Agr. Soc., 220 App. Div. 429 (222 N. Y. S. 70). The same has been held true of a golf club, incorporated as a non-profit organization. Maryland Casualty Co. v. Stevenson, 143 Okl. 285 (288 Pac. 954); Francisco v. Oakland Golf Club, 193 App. Div. 573 (185 N. Y. S. 97).

"Five or more persons engaged in the production of agricultural products may form a non-profit, coöperative association, with or without capital stock, under the provisions of this law." Code, § 65-202. "The term 'agricultural products' shall include . . dairy . . and any farm products. . . Associations organized hereunder shall be deemed non-profit, inasmuch as they are not organized to make profits for themselves, as such, . . but only for their members as producers." Code, § 65-201. Such an association may borrow money and make advances to its members, purchase or otherwise acquire, sell, transfer, and pledge shares of the capital stock or bonds of any corporation or association engaged in any related activity, and may buy, hold, and exercise all privileges of ownership over such real or personal property as may be necessary or convenient for the conduct and operation of any of the business of the association or incidental thereto. Code, § 65-213. The foregoing powers and privileges do not constitute an association chartered under this law as one organized for pecuniary gain, or put the association on the same basis as ordinary business corporations chartered under the general laws of this State. Such an association may be organized, under the marketing act, to engage in any activity in connection with the marketing or sale of the agricultural products of its members, and with processing, canning, and handling the same. See Code, § 65-214.

It follows therefore that under the uncontradicted evidence the Georgia Milk Producers Confederation, organized and existing under the provisions of the coöperative marketing act, supra, is a non-profit organization within the meaning of the provisions of the workmen's compensation law, and as such it is not subject to the provisions of the act. The court did not err in sustaining the appeal.

*Judgment affirmed. Sutton and Felton, JJ., concur.*