21490. GEORGIA OSTEOPATHIC HOSPITAL, INC. v. ALFORD *et al.*, Tax Assessors, *et al.*

ARGUED JANUARY 17, 1962—DECIDED FEBRUARY 12, 1962.

*James A. Mackay, Dan E. McConaughey,* for plaintiff in error.
*George P. Dillard, Herbert O. Edwards, Robert E. Mozley,* contra.

QUILLIAN, Justice. The sole question for decision is whether, according to the evidence submitted upon the trial of the case, the plaintiff hospital corporation was a purely charitable institution within the meaning of the Constitution of 1945, Art. VII, Sec. I, Par. IV (*Code Ann.* § 2-5404), and the statutes of the State embodied in *Code Ann.* § 92-201 (Ga. L. 1946, p. 12, and Ga. L. 1947, p. 1183).

In the case of *Elder v. Henrietta Egleston Hospital,* 205 Ga. 489, 492 (53 SE2d 751) it is held: "In 1946 the General Assembly passed an act exempting from taxation all of the property enumerated in the above-stated clause of the Constitution, using the identical language there employed, Ga. L. 1946, p. 12. By that act the General Assembly fully exhausted its constitutional power to make exemptions, and the amending act of 1947 (Ga. L. 1947, p. 1183), which expressly exempted from taxation all hospitals of purely public charity added nothing to what the General Assembly had previously done by the act of 1946."

This court in the same well considered case (before the writer became one of its members) made clear that a purely charitable institution, a hospital, was not removed from that category simply because it derived a profit from the patronage of patients who were able to pay, so long as the money earned was reserved

for the purpose of carrying out its purely charitable purposes. The opinion recognized that as a matter of common sense that it was necessary for such institution to acquire and maintain a surplus in order to carry out its charitable design by the expansion of its facilities and services.

In the case of *Mu Beta Chapter &c. House Corp. v. Davison*, 192 Ga. 124, 126 (14 SE2d 744), the rule is stated: "The test is not whether the plaintiff is an organization of purely public charity, but whether the property itself is dedicated to charity and used exclusively as an institution of purely public charity . . . It is the use to which the property is put, rather than the declaration of purpose found in its owner's charter, that determines the question of exemption from taxation."

The constitutional provisions for tax exemption of public charities were clearly summarized in a recent opinion of this court, *United Hospitals Assn. v. Fulton County*, 216 Ga. 30, 32 (114 SE2d 524): "There are infinite charities that deserve the plaudits of all mankind, but the Constitution restricts tax exemption of institutions of charity to those and those only that are 'purely' charity and also that are 'public' charity. Without a positively fixed recognition of the indispensability of the presence of these two qualifying words, courts would ramble in a wilderness of private charitable actions in seeking an answer to their eligibility to tax exemption. We have looked with apprehension upon national legislation under the 'general welfare clause' of our Federal Constitution which may be welfare for special groups but not the general public. Our great admiration for all charitable acts must not cause us to overlook the plain mandate of the Constitution."

Applying the principles, to which we refer, to the facts of the present case, we must determine whether there was evidence upon which the trial judge could predicate his judgment dissolving the temporary injunction restraining the defendants from enforcing the ad valorem taxes assessed against the property of the plaintiff corporation and in the future assessing like ad valorem taxes against it, which was in effect holding that the plaintiff was not a purely charitable institution.

We think the issue is so clearly made by the pleadings and

evidence quoted in the foregoing statement of facts as to require little discussion. While the plaintiff corporation from the facts shown in the record is rendering, as is the case of most hospitals and all skilled physicians, a valuable and splendid service in the healing of the sick and injured, we can not hold that under the facts developed by the record it functions as a purely charitable institution.

According to the testimony of its own officers and the facts reflected by its records the hospital operated generally for profit, and while there was some evidence that it did on occasion treat indigent patients, the general practice of the institution was to collect all that it could from its patients, and only charge off as charity those bills it was unable to collect. The evidence in this behalf showed it employed the methods of collection customarily used by business institutions. The evidence is very clear that the principal beneficiaries of the hospital's activities were its employees and the doctors who used its facilities in the profitable practice of their profession and the collection of accounts due them by patients.

In this connection the observation is inescapable that only the staff doctors were permitted the use of the hospital facilities. There was proof that except in emergency cases only patients referred by them could be admitted to the hospital, and that in emergency cases they were called to perform surgical operations or medically treat the emergency patients.

The plaintiff, plaintiff in error here, contends that as in the *Egleston Hospital* case, supra, its purpose was to accumulate funds so as to expand its facilities so that it could carry out its charitable design. The cases are distinguishable upon their facts. In the *Egleston Hospital* case the hospital was functioning as a charitable institution and earning money from patients able to pay was a mere incident in its operation, and the money so earned was to carry on the beneficent work of the institution. Here, the Doctors Hospital is, according to the evidence adduced upon the trial, engaged principally for non-charitable purposes and apparently chiefly for the benefit of its staff.

*Judgment affirmed. All the Justices concur.*