22262. CAMP, Tax Commissioner, et al. v. FULTON COUNTY MEDICAL SOCIETY.

ARGUED NOVEMBER 13, 1963—DECIDED JANUARY 16, 1964—REHEARING DENIED FEBRUARY 6, 1964.

*Harold Sheats, J. C. Savage, J. C. Murphy,* for plaintiffs in error.

*Haas, Dunaway, Shelfer & Haas, John A. Dunaway,* contra.

*Alston, Miller & Gaines,* for parties at interest not parties to record.

HEAD, Presiding Justice.  Fulton County Medical Society, a corporation chartered by the Superior Court of Fulton County, brought a petition for injunction against the Tax Commissioner of Fulton County and others, asserting that the property owned by the petitioner, located in the City of Atlanta, and known as "The Academy of Medicine," is exempt from taxation under *Code* § 92-201, as amended.  The defendants filed an answer denying that the property of the petitioner has been used exclusively for charitable and educational purposes, and denying that the property is exempt from taxation.  The case was heard by the trial judge upon the motion of the petitioner for summary judgment.  Judgment was entered for the petitioner, to which the defendants except.

The evidence before the trial judge on the motion for summary judgment was the affidavit of Dr. Major F. Fowler, a member of the petitioner since 1925, which was attached to the motion for summary judgment, and the deposition of Dr. Thomas Jefferson Anderson, Jr., formerly Secretary-Treasurer, and at the time of the deposition, President-elect of the petitioner.

From an examination of the charter of the petitioner, as amended, attached to the petition, and the evidence submitted by the petitioner, it appears: The petitioner does not have any capital stock, and the funds for its operation are obtained from dues contributed by the members.  There are approximately 1,000 members, and the petitioner has the right to judge the qualifications of its applicants for membership.  Every reputable and legally qualified physician of Fulton or an adjoining county who has been graduated from an acceptable medical college and who conforms to the Principles of Medical Ethics of the American Medical Association is eligible for membership, subject to classifications in the bylaws.  None of the officers of the petitioner receive any compensation for work done for the petitioner.  There are four full-time employees, not members of the petitioner, working in the building owned by the petitioner, three secretaries and a janitor.  The secretaries keep the accounts of the business of the Academy and the petitioner, answer telephone inquiries by persons desiring to obtain a physician, publish a monthly bulletin of the petitioner, and process

applications for membership. No rent is charged to any organization using the building of the petitioner. Several rooms are occupied by the Atlanta Graduate Medical Assembly, the function of this organization being to have a graduate assembly each year for the scientific education of members and attending physicians. Some of the uses of the building are the following: The Scientific Meeting is held once each month, at which meeting medical papers are presented for the benefit of the physicians attending and to educate the associates in the practice of medicine. The Woman's Auxiliary of the Fulton County Medical Society meets once each month. The Clinical Society, a group composed of physicians under the age of 40, meets and medical papers are presented. Meetings have been held in the building by the Atlanta Radiological Association, the Pathologist Society, the Psychiatry and Neurological Society, the Southern Neuro-Surgical Society, the Pediatricians' Society, the Atlanta Chapter of Arthritis and Rheumatism Foundation, the Traffic Safety Committee, the American Medical Association (in connection with Civil Defense), the Atlanta Orthopedic Society, The Georgia Heart Association, the Metropolitan Atlanta Commission on Alcoholism, the Diabetes Association, the Atlanta Milk Commission, the Geriatric Committee, and the Spring Epidemic Intelligence Service Conference of the Communicable Disease Center. These meetings are attended by persons not members of the petitioner, and some of the meetings are open to the public. Each year "polio clinics" are held in the building, where vaccines are given to the public at cost.

It is the contention of the petitioner that its property is exempt from taxation under the following provision of *Code Ann.* § 92-201: "The following described property shall be exempt from taxation, to wit: . . . all institutions of purely public charity; . . . all buildings erected for and used as a college, nonprofit hospital, incorporated academy or other seminary of learning, . . ."

■ The defendants filed their objection to the motion for summary judgment, in which they denied that the property of the defendant is devoted to any uses which would cause it to be exempt from taxation, but they presented no evidence in oppo-

sition to the motion. The denial by pleadings of facts asserted by a petitioner will not prevent the granting of a motion for summary judgment if the pleadings of the petitioner and the uncontradicted evidence submitted by the petitioner authorize a summary judgment. *Laws v. Oakey,* 216 Ga. 408 (116 SE2d 575); *Scales v. Peevy,* 103 Ga. App. 42 (118 SE2d 193).

■ The petitioner is not operating a college, incorporated academy, or other seminary of learning within the meaning of that portion of *Code Ann.* § 92-201 exempting from taxation "all buildings erected for and used as a college . . . incorporated academy or other seminary of learning, . . ."

3. "It is the use to which the property is put, rather than the declaration of purpose found in its owner's charter, that determines the question of exemption from taxation." *Mu Beta Chapter Chi Omega House Corp. v. Davison,* 192 Ga. 124, 126 (14 SE2d 744); *Georgia Osteopathic Hospital, Inc. v. Alford,* 217 Ga. 663 (124 SE2d 402).

In *City of Waycross v. Waycross Savings & Trust Co.,* 146 Ga. 68 (4) (90 SE 382), it is indicated that the term "charity" used in the tax exemption statute is to be construed "in its broad sense." In *Tharpe v. Central Ga. Council of Boy Scouts of America,* 185 Ga. 810, 813 (196 SE 762, 116 ALR 373), the meaning of the term was held to include "substantially any scheme or effort to better the condition of society or any considerable part of it."

However, in order to authorize its exemption from taxation an institution must be one of "purely public charity." *Code Ann.* § 92-201. The fact that an institution serves a benevolent purpose does not necessarily make it a "purely public charity." *United Hospitals Service Assn. v. Fulton County,* 216 Ga. 30, 33 (114 SE2d 524). No matter how high the ideals of an institution, nor how lofty its purposes, in order for it to qualify as a charitable institution for tax exemption under *Code Ann.* § 92-201, it must have the sole purpose and activity of dispensing public charity.

Counsel for the petitioner cite and strongly rely on Dulles v. Johnson, 273 F2d 362. That case deals with bequests which are deductible in the calculation of Federal estate taxes. The

bequests under consideration were made to three bar associations. The language construed was a portion of Sec. 812 (d) of the 1939 Internal Revenue Code, which permits as a deduction from the value of the gross estate, "[t]he amount of all bequests, legacies, devises, or transfers . . . to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes . . ." It was held that the operations of the bar associations were "charitable, scientific . . . [and] educational" within the meaning of Sec. 812(d). The Dulles case is clearly distinguishable from the present case where the petitioner must qualify under our tax exemption statute as an institution of "purely public charity." *Code Ann.* § 92-201.

An examination of the evidence considered by the trial judge on the motion for summary judgment shows that the petitioner is organized for laudable purposes, and its building is used by some organizations which would classify as charitable organizations, but it can not be overlooked that one of the purposes of the petitioner is the advancement of the medical profession. It is true that the advancement of the knowledge and skill of the medical profession will inure to the benefit of the public served by the profession, but such advancement will also benefit the members of the petitioner. It therefore can not be said that the building of the petitioner is used for "purely public charity," *Code Ann.* § 92-201, and the trial judge erred in granting the summary judgment in favor of the petitioner.

*Judgment reversed. All the Justices concur, except Head, P. J., and Quillian, J., who dissent.*

Head, Presiding Justice, dissenting. Division 3 of the opinion represents the views of the majority of the court, in which the writer does not concur.

Under the evidence, the building of the petitioner is not used "for the purpose of . . . corporate profit and income distributable to shareholders, . . ." *Code Ann.* § 92-201. The petitioner is not operating a business in competition with other businesses not enjoying tax exemption, as was true in *United Hospitals Service Assn. v. Fulton County*, 216 Ga. 30, supra.

Some of the organizations using the building of the petitioner are unquestionably charitable institutions. Some of the organizations meet for the study and advancement of the science of medicine generally, and in specialized fields. The happiness and well-being of the public must necessarily be increased by the increased skill and knowledge of the members of the medical profession serving it. It can not be denied that in the area served by the members of the medical profession belonging to the petitioner the public generally is benefited by the exchange of knowledge between the members of the petitioner which is effectuated by their meetings held in the building owned by it. The public generally is also benefited by the meetings of the medical societies whose members are not all members of the petitioner. The meetings of such organizations as the Traffic Safety Committee and the Atlanta Milk Commission are shown to be in the public interest.

Under the definition of the term "charity" approved by this court in *Tharpe v. Central Ga. Council of Boy Scouts of America*, 185 Ga. 810, supra, as "substantially any scheme or effort to better the condition of society or any considerable part of it," and the indication in *City of Waycross v. Waycross Savings & Trust Co.*, 146 Ga. 68, supra, that the term "charity" is to be construed "in its broad sense," it is my opinion that the building of the petitioner is shown by the evidence to be used for purely public charity. I therefore dissent from Division 3 of the opinion and the judgment of reversal.

I am authorized to say that Mr. Justice Quillian concurs in this dissent.