## 45520. GEORGIA OSTEOPATHIC HOSPITAL, INC. v. STRICKLAND.

HALL, Presiding Judge. The hospital appeals from a judgment of the DeKalb Superior Court affirming an award of the State Board of Workmen's Compensation to one of its employees.

The sole issue is whether the Georgia Osteopathic Hospital is an "employer" as contemplated by *Code Ann.* § 114-101, and thus subject to the Workmen's Compensation Act. The section defines an employer as "any individual, firm, association or corporation engaged in any business operated for gain or profit, except as hereinafter provided." This court has held that "non-profit organizations do not come under, the definition of employer as defined in the Workmen's Compensation Law." *Flint Electric Membership Corp. v. Posey,* 78 Ga. App. 597, 599 (51 SE2d 869).

The board found "as a matter of fact" that the hospital was operated for gain "in that each year its net worth has increased and a profit has been shown above its operating expenses." It further found that the same issue was decided by the Supreme Court of Georgia, (citing *Ga. Osteopathic Hospital v. Alford,* 217 Ga. 663 (124 SE2d 402)) and that, as a matter of law, the hospital is operated for a gain or profit.

The hospital contends the board misinterpreted and misapplied the law of the *Alford* case. We must agree. The sole issue and the holding in *Alford* was that the hospital was not a "purely charitable institution" within the meaning of the Constitution and statutes of the state and therefore not exempt from ad valorem taxes. It did *not* hold that the hospital was a profit-making organization.

"Charitable" and "non-profit" are not synonymous. Non-profit organizations also include those devoted to religious, scientific, educational, literary and other purposes. Further, the test for determining whether an organization is non-profit is not whether it has an excess of income over expenses for several years. If this were the case, no such organization could ever expand beyond its initial stage.

The Georgia Corporation Code defines a non-profit corporation as one "no part of the income or profit of which is dis-

tributable to its members, directors or officers." *Code Ann.* § 22-2102 (c). Both the charter and the actual operations of the hospital conform to this test as shown by the evidence adduced at the hearing, including the fact it is recognized as a non-profit organization by the United States Internal Revenue Service and the Georgia Sales Tax Unit.

Finally, the fact that the member-doctors clearly benefit in their private practice from the hospital's operation does not make ' this a business run for gain. The same thing could be said for the members of the Georgia Milk Producers Confederation or the Flint Electric Membership Corp.; yet this court has held both organizations to be non-profit for the purposes of workmen's compensation. *Hall v. Ga. Milk Producers Confederation,* 61 Ga. App. 676 (7 SE2d 330); *Flint Electric Membership Corp. v. Posey,* supra.

*Judgment reversed. Bell, C. J., Jordan, P. J., Eberhardt, Pannell, Deen, Quillian and Whitman, JJ., concur. Evans, J., dissents.*

SUBMITTED SEPTEMBER 15, 1970—DECIDED DECEMBER 4, 1970.

*Zachary, Hunter, Zachary & Bowden, W. E. Zachary, Sr.,* for appellant.

*Essley B. Burdine,* for appellee.

EVANS, Judge, dissenting. The Workmen's Compensation Board made a finding from the evidence submitted that this hospital is an "employer" as contemplated by *Code Ann.* § 114-101, and that "as a matter of fact" the hospital was operated for gain. This finding was affirmed by the Superior Court of DeKalb County, and if there was any evidence before the State Board of Workmen's Compensation to support its finding, we are bound thereby.

Among the findings by the board was that "any individual firm, association or corporation engaged in any business for gain or profit, except as hereinafter provided" is subject to workmen's compensation law, if meeting the other requirements, under *Code* § 114-101, as amended (Ga. L. 1943, pp. 401, 402; 1950, pp. 324, 404, 405; 1952, pp. 167, 168; 1953, pp. 526, 527; 1958, p. 183; 1964, p. 675; 1967, p. 633; 1968, pp. 1163, 1164). The board also

found that under *Code* § 114-107 as amended (Ga. L. 1937, pp. 528, 529) that even though workmen's compensation does not apply "to employees of institutions maintained and operated as public charities; nor employers of such employees," that as a matter of fact, from a consideration of all the records before the board, including the financial report of the defendant, "that the Georgia Osteopathic Hospital is clearly operated for gain in that each year its net worth has increased and a profit has been shown above its operating expenses." From the above findings the board further stated: "The institution is not operated as a public charity but merely for the purpose of providing facilities for members of the staff of said hospital and the purpose of training persons engaged in the practice of osteopathic medicine."

It also considered that the Supreme Court of Georgia, in the case of *Ga. Osteopathic Hospital v. Alford,* 217 Ga. 663 (124 SE2d 402) had decided that this hospital was not "entitled to an exemption [from taxation] as being a purely public charitable institution." It recited in its findings of fact that "the evidence recited by the court in that case is almost identical to that submitted to the board" and held that the hospital was subject to the payment of workmen's compensation. See *Code* § 114-707; *Southeastern Express Co. v. Edmondson,* 30 Ga. App. 697 (1) (119 SE 39); *Metropolitan Cas. Ins. Co. v. Dallas,* 39 Ga. App. 38 (146 SE 37); *Bituminous Cas. Corp. v. Jackson,* 68 Ga. App. 447 (23 SE2d 191); *Wiley v. Aetna Cas. &c. Co.,* 98 Ga. App. 241 (105 SE2d 377); *Wilson v. Aragon Mills,* 110 Ga. App. 392 (138 SE2d 596), and citations contained therein.

The charter of this corporation was introduced into evidence before the State Board of Workmen's Compensation (see Transcript, pp. 12-15) and although at one place reciting that it shall not be operated for pecuniary gain or profit, elsewhere therein it is provided that said corporation shall have all other powers necessary to carry on the business contemplated, as enumerated in § 22-1827 (d) of the Corporation Act of 1938 (Ga. L. 1937-38, Ex. Sess., pp. 214, 222, 223; *Code Ann.* § 22-1827) except "those powers concerning stock." The cited section, among other things, authorizes corporations "to hold, purchase and convey real and personal property of every kind consistent with the purposes of its

existence, and to deal with, mortgage, pledge, incumber or lease any such real and personal property with its franchise." The charter also provides for charging pay patients and thereby to extend its charitable work.

The evidence before the board was sufficient to support the findings of fact, including the statement that the evidence recited in the *Alford* case, supra, "is almost identical to the evidence submitted to the board." In my opinion, from a reading of the *Alford* case, the board was authorized to make this finding, even though it found that the institution was not "a public charity," whereas the Supreme Court ruling was based on the findings that it did not function as a "purely charitable institution." It is true the institution has, from the evidence, done some charitable work. The State Board of Workmen's Compensation was correct in holding this corporation had not shown itself to be a "non-profit corporation" under said definition, and in holding "that it was not a public charity" as is contemplated by *Code Ann.* § 114-107. The institution was therefore not exempt from the Workmen's Compensation Act.

I would therefore affirm the judgment of the lower court.