STATE OF GEORGIA *et al.* v. DAVISON, tax collector.

No. 14869.   JULY 10, 1944.

32

35

*T. Grady Head, attorney-general,* and *Marshall L. Allison, assistant attorney-general,* for plaintiffs in error.

*Carlisle Cobb,* contra.

GRICE, Justice. ■ In addition to the general grounds, the record contains six special grounds. The questions presented, both in the general and special grounds, may be thus stated: 1. Did the Regents of the University System of Georgia have authority to execute the instrument under consideration? 2. Does the instrument under consideration have the effect of creating and vesting an estate for years in the lessee, Sigma Nu Fraternity Home Association?

The law of Georgia provides: "There is hereby constituted a department of the State Government of Georgia, to be known as the 'Board of Regents of the University System of Georgia.' The name of the corporation heretofore established and existing under the name and style, 'Trustees of the University of Georgia,' is hereby changed to 'Regents of the University System of Georgia.'" Code, § 32-101. "The State holds the legal title to and/or is the beneficial owner of: The several institutions operated by the Board of Regents of the University System, including all real and personal property belonging to the several institutions or used in connection therewith, and all other property conveyed to said Board for the use of any of said institutions or for educational purposes, or conveyed to any of the boards of trustees of which the Board of Regents is the successor, or to any of the institutions under its control." § 91-104. "The corporation created under section 32-101, and known as 'Regents of the University System of Georgia,' is hereby declared to be a governmental agency of the State, and all property held by said corporation under this title is hereby declared to be the property of the State and subject to all the limitations and restrictions imposed upon other property of the

State of Georgia by the Constitution and laws of this State. The members of the Board of Regents of the University System of Georgia are hereby declared to be public officers of the State of Georgia and subject, in all their actions as such, to all the limitations and restrictions imposed by the Constitution and laws of this State upon other public officers." Ga. L. 1935, p. 171. Ga. Code Ann., § 32-138. "Tuition, matriculation fees and proceeds of the sale of personalty shall be reported and remitted to the secretary-treasurer of the. Board of Regents, who shall transmit the same to the State Treasurer, and the same are hereby appropriated as a continuing appropriation to the branch or division of the· University System from which they originate, to be drawn out of the treasury upon a requisition just as other funds are drawn. The proceeds from dormitory rentals, mess-hall charges, proceeds of athletic contests, and other similar revenue shall remain with the institutions originating the same, and shall not be paid into the treasury under this section. All such receipts, however, shall be reported to the secretary-treasurer of the Board of Regents and shall be audited by the State Auditor and his reports shall be available to the Governor, to the General Assembly, and to the Board of Regents; and all such revenue is declared to be under the control of the Board of Regents, which control may be exercised directly or through such athletic associations or organizations as it may authorize." Id., § 32-140. "All properties owned or held by the Regents of the University System of Georgia pursuant to this title, which in section 32-139 are declared to be the public property of the State, may be sold, leased, or otherwise disposed of by the said Regents subject to the approval of the Governor, whenever the Board of Regents may deem such sale, lease, or other disposition to the best interests of the University System: provided, that the Board of Regents shall first determine that such property can no longer be advantageously used in the University System." Ga. L. 1935, p. 168. Ga. Code Ann., § 32-141.

In *Regents of the University System* v. *Blanton,* 49 *Ga. App.* 602 (176 S. E. 673), it was said: "The State is only a corporate name for all the citizens within certain territorial limits. The whole people, acting as a public corporation, have a right to enter into contracts and make purchases. . . The legislature may delegate this authority to make a contract to certain officers or a

public board or department of the State government; and the action of such delegated authority in the matter of making a contract is the action of the State. . . The Board of Regents of the University System of Georgia is not a mere private corporation, but is an instrument of State for performing one of the functions of the government of the State of Georgia, to wit, that of the education of its people." We conclude from what has been said that the Regents of the University System had authority to enter into the kind of contract now under consideration, so long as there is no abuse of discretion, and there appears here no abuse of discretion.

■ The important question for decision is, did the instrument under consideration have the effect of merely creating the relation of landlord and tenant between the parties, or did it vest an estate for years in the lessee? "When the owner of real estate grants to another simply the right to possess and enjoy the use of such real estate, . . the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct, . . which is not subject to levy and sale." Code, § 61-101. The term "usufruct" signifies the right to use and enjoy the property of another, provided it be done without impairing or altering the substance of the thing. Mulford v. Le Franc, 26 Cal. 88, 102; Heintzen v. Binninger, 79 Cal. 5 (21 Pac. 377); Cartwright v. Cartwright, 18 Tex. 626, 628; Modern Music Shop v. Concordia Fire Ins. Co., 131 Misc. 305 (226 N. Y. Sup. 630); Schwartz v. Gerhardt, 44 Oregon 425 (75 Pac. 698), citing Bouvier's Law Dictionary. An estate for years is defined by our Code, § 85-801, as follows: "An estate for years is one which is limited in its duration to a period fixed or which may be made fixed and certain. If it is in lands, it passes as realty. It may be for any number of years, provided the limitation is within the rule against perpetuities."

So far as has been found, there are but few adjudications of this court that throw any light upon the disputed issue before us. In *Collier* v. *Hyatt,* 110 *Ga.* 317 (35 S. E. 211), it was held that the contract there involved did not by its terms create an estate for years, but that under it S became the tenant of C. That contract recited "that S has rented and leased from C a building for five years at a designated sum to be paid in monthly installments,

and if not promptly paid the lease to terminate at C's option; that C agrees, should the building be destroyed by fire, the lease shall cease; that S shall have permission to make at his own expense such alterations in the building as he may desire, provided he does not weaken or damage the same; that S shall keep the building in thorough repair at his own expense, and deliver it up at the expiration of the lease in as good order and repair as when it was received, usual wear and tear excepted; and that if C should desire to tear down the building and erect a new one on the premises at any time during the lease, S shall vacate upon sixty days notice, S to have the right to occupy the ground floor and basement of such new building when completed, at a rental then to be agreed upon."

It is important to be noted, in the case just referred to, that if C should desire to tear down the building and erect a new one on the premises at any time, S was required to vacate upon 60 days' notice, and that S should have the right to occupy a portion of said building if and when completed, at a rental to be then agreed upon. In *Johnson* v. *Brice,* 151 *Ga.* 472 (107 S. E. 338), the contract merely recited that Brice leased to Hardison certain described land for 15 years at one hundred dollars per year. Notes were given each year, reciting that they were "for rent of land in Rutland District, Bibb County, Georgia," and across each was written: "Rent note. In case the premises are rendered untenable by fire, rent to cease from date of fire." In the body of each note was printed the following: "It is agreed that no change, alterations, or repairs shall be made by tenant without the written consent of the landlord." The court held that Hardison obtained a mere usufruct. A similar result was reached in the case of *Griffith* v. *Smith,* 155 *Ga.* 717 (118 S. E. 194). Whether those decisions be in conflict with earlier full-bench decisions or not, neither constrains us to hold that the contract here dealt with did not create an estate for years. The instruments in those two cases are in material respects far different from the one here involved. The rulings there made furnish no support for the contention that under the record before us only the relation of landlord and tenant existed between the parties. They are pertinent on the question whether every renting or leasing of real estate for a term of five years or more creates an estate for years. That is a separate matter which will be referred to later.

In *Atkinson* v. *Orr, 83 Ga.* 34 (9 S. E. 787), it was ruled that where one enters into possession, and at his own expense erects buildings on the city lots of another under a parol contract that he is to do so and is to pay a certain annual ground rent each and every year, and that he is to retain possession as long as he so pays, but on failure to pay, the owner is to take possession of the premises, including the buildings, as his property absolutely, and where this is done in contemplation of reducing the contract to writing, which is not accomplished in the lifetime of the owner, but after his death, his executor, with the assent and approbation of all persons interested, does, in connection with the other party, reduce it to writing, under seal, the latter stipulating in writing to pay the agreed rent for each and every year, or in default, after ninety days' notice, to surrender the premises and the buildings thereon, or be considered as a tenant holding over, and the former stipulating that the latter, his heirs and assigns, shall retain possession as tenant so long as the rents are paid, etc., the contract does not create a tenancy from year to year, but is *prima facie* a perpetual lease on condition of prompt payment of the ground rent annually, the written contract being, by its own terms, only an embodiment of the previous parol contract. The same instrument there involved was again before this court in *Penick* v. *Atkinson,* 139 *Ga.* 649 (77 S. E. 1055, 46 L. R. A. (N. S.) 284, Ann. Cas. 1914B, 842), the question being as to the nature of the estate or interest passing thereunder to the lessee, and, after saying that in the first case it was clearly demonstrated that the parties meant something more than the creation of a tenancy by the year, or from year to year, it was held that the instrument created a base or determinable fee, to wit, an estate in fee, defeasible upon non-compliance with the conditions named therein. In *James G. Wilson Manufacturing Co.* v. *Chamberlain-Johnson-DuBose Co.,* 140 *Ga.* 593 (79 S. E. 465), the ruling was as follows: "In 1910 a private corporation leased from the owners thereof certain city lots for a term of twenty-one years, agreeing to pay specified annual rentals, and, after the first year, all taxes, assessments, insurance premiums, and expenses for repairs, and agreeing further to tear down the building then on the premises and to erect in its stead a building in accordance with certain plans and specifications, with the right to add improvements thereto, or to replace it with a

building or buildings to cost not less than the one replaced, and equally adaptable to general business purposes; also stipulating to keep the building or buildings insured to three-fourths of their value and for the lessor's protection, and should the same be injured or destroyed by fire or other casualty, during the term, to have them repaired or replaced, and, at the expiration of the lease, to deliver the premises in good condition to the lessors, the building then on the premises to become their property; the lessee having the right to sublet the premises, provided, 'the business to be conducted therein be not of an objectionable character.' Held, that the lessee had an estate for years in the leased premises, and that a materialman's lien could attach to and be enforced against such interest, subject to the conditions of the lease."

In the case last referred to, certain covenants were contained in the lease, placing certain burdens on the lessee, among them, the tearing down of the building then on the premises and the erection in its stead of another building under certain plans and specifications. There was also a stipulation to keep the buildings insured for a certain amount for the lessors' protection, and there were certain named restrictions on the right to sublet the premises. The Code, §′ 85-803, in declaring that "An estate for years carries with it the right to use in as absolute a manner as a greater estate," can not mean that a contract which ordinarily would be construed to create an estate for years, is reduced to a mere usufruct because certain limitations are put upon its use. The quoted clause merely means that such an interest as passed to the grantee under an instrument creating an estate for years carries with it the right to use it in the same manner as the holder of a greater estate. The interest so passing may be encumbered or somewhat limited, as in the instant case, without necessarily changing the character of the estate.

The Code, § 85-802, lays down a rule by which to distinguish between an estate for years and the relation of landlord and tenant. That section declares: "An estate for years differs, when applied to personalty, from a contract of hiring, in that, the latter is a bailment conveying no interest in the property to the bailee but a mere right of use; when applied to realty it differs from the relation of landlord and tenant in that in the latter the tenant has no estate, but a mere right of use very similar to the right of a

hirer of personalty." The present instrument gives to the Association more than "a mere right of use very similar to the right of a hirer of personalty."

It is to be noted, in the first place, that this contract may run for ninety-nine years. Regardless of whether it be true that a lease for more than five years creates an estate for years, it is, we apprehend, at least somewhat unusual for an owner to agree with another that the latter shall have the right to the use and occupancy of premises for that length of time under the relationship of landlord and tenant. Secondly, it may be observed that the price for that right is only to be one dollar per year, which is another fact a little unusual, considering the amount of land here involved and its location, and of itself suggests more of a gift or grant than a mere rental by a landlord to a tenant. It has some significance also that the lessee agrees to erect, and the lessor requires the erection of, a building on the premises to cost not less than $20,000 nor more than $35,000, which is to become the property of the lessor upon the expiration of the lease. It may also be noted that paragraph 4 of the "lease" contract provides that the Association may transfer, sell, and convey to any other fraternity existing and operating at the University at any time during this lease "all rights of the Association in said lot and premises;" and that paragraph 9 provides that, "other than hereinbefore stated," the Association shall have no right to sell, lease, or convey the same premises.

There are certain other indicia of ownership in the fraternity corporation. One of the provisions is that: "The Association may transfer, sell, and convey to any other fraternity existing and operating at the University of Georgia at any time during this lease all rights of the Association in said lot and premises." Another is that: "Other than hereinbefore stated, the Association shall have no right to sell, lease, or convey the said premises." Why provide that in any event the lessee had the right to sell, lease, or convey the said premises, if a mere usufruct passed to it? The loan agreement between the parties, reciting the fact of the lease, contains at least two clauses that throw light on the real character of the instrument which we are called on to construe. These are as follows: "As for security for the repayment of said loan, the Association hereby transfers and conveys to the Regents all of its right, title, and interest in and to the said lease to the real estate

leased thereunder and improvements thereon, subject to the right of the use of the said premises by said fraternity. In the event of default in the payment by the Association of three consecutive installments upon the loan as and when due, the Regents may sell the right, title, and interest of the Association in the said leased premises, the house and other improvements thereon, at public sale for cash to the highest bidder, before the courthouse door of Clarke County, Georgia, after advertising the same for four consecutive weeks in the newspaper in which legal advertisements for said Clarke County are published. At such sale the Regents may bid and buy." These embrace paragraphs 6 and 7 of the loan agreement. It thus appears that the parties themselves, a few months after the lease was signed, put their own interpretation upon it, which was that it conveyed an interest, not a mere use. See *Georgia Railroad &c. Co.* v. *Smith,* 83 *Ga.* 626, 627 (3) (10 S. E. 235) ; *Turner* v. *Chambers,* 160 *Ga.* 93, 97·(127 S. E. 610). The loan agreement, from which the quoted clauses are taken, was dated March 15, 1941. The lease itself bears date August 20, 1940. The instrument was recorded, presumably by the lessee, on the deed records of the county. There is no provision for the recording of a mere landlord-and-tenant rental contract. All these things suggest that more than a mere usufruct passed to the lessee. It is true that the agreement between the two contracting parties contains certain covenants which prevent the lessee from having the same absolute control over the property during the term that an owner would have. But such restrictions do not, to our mind, outweigh the other features of the contract, so as to reduce the character of the right acquired by the fraternity corporation from that of a grantee of an estate for years to a mere usufruct, so as to make the relation merely that of landlord and tenant. The law writes into a contract between a landlord and tenant certain obligations of the landlord, and others of the tenant, and places certain restrictions on both.

But it would hardly be claimed that by agreeing among themselves on certain matters which place upon the one or the other certain extra burdens, or relieve him of certain liabilities, a contract definitely creating the relationship of landlord and tenant between two persons was thereby changed into something else. So here, if the contract, looking to its four corners, creates in the fra-

ternity corporation an estate for years in the property, it will not be construed otherwise merely because the parties make certain covenants as to the use and sale thereof which the law itself would not read into the holder of such a grant.

It is not necessary to a decision of this case to decide whether every renting or leasing of real estate for a period of five years or more creates an estate for years under the Code, § 61-101. There are several statements to that effect in the cases of this court and the Court of Appeals. *Schofield* v. *Jones,* 85 *Ga.* 816, 823 (11 S. E. 1032); *Anderson* v. *Kokomo Rubber Co.,* 161 *Ga.* 842, 846 (132 S. E. 76); *Harms* v. *Entelman,* 21 *Ga. App.* 295 (94 S. E. 276); *Jones* v. *Fuller,* 27 *Ga. App.* 84, 87 (5 a) (107 S. E. 544); *Dunlap* v. *George,* 48 *Ga. App.* 341 (172 S. E. 657); *Shell Petroleum Corp.* v. *Stallings,* 51 *Ga. App.* 351 (180 S. E. 654). Whether as to that point *Schofield* v. *Jones* was obiter, and whether, if not obiter, the later cases can be reconciled with what was ruled in *Collier* v. *Hyatt* and *Johnson* v. *Brice,* supra, or whether the true rule be, as stated in *Hutcheson* v. *Hodnett,* 115 *Ga.* 990, 993 (42 S. E. 422), that the question depends upon the intention of the parties, without regard to the length of the term, need not be here passed upon, since, in any view of that matter, the present case must be determined adversely to the contentions of the plaintiff in error.

*Judgment affirmed. All the Justices concur, except Bell, C. J. and Wyatt, J., who dissent, and Jenkins, P. J., not participating.*

WYATT, Justice. I concur in what is said in division 1 of the majority opinion. I can not concur in the ruling made in division 2, nor in the judgment of affirmance.

In order to determine whether or not the instrument under consideration had the effect of creating and vesting an estate for years in the lessee, Sigma Nu Fraternity Home Association, we look first to the terms of the lease. The lease provides: "The term for which the Association is granted the use of the said lot under this agreement is one year from the date hereof, but with the said renewal granted to the said Association for periods of one year, for a maximum of 99 years." The lease further provides that the same is automatically extended from year to year unless the lessee, ninety days before the expiration of any yearly term, gives to the Regents written notice of intention to terminate the lease. It is argued

that this provision amounts to a lease for only one year, and can not amount to the creation of an estate for years, because the period covered by the lease is less than five years. In *Walker* v. *Wadley*, 124 *Ga.* 275 (52 S. E. 904), this court said: "A lease contract wherein the owner of land demises the premises for one year, with an option to the tenant during that year to extend the lease upon 'notice of intention to take this option,' and a further option of increased rental, notice of acceptance of which to be given by the tenant at a stated time preceding the commencement of such additional term, is a lease for ten years at the election of the lessee, absolute for the first year and optional with the lessee as to future continuance under the terms and conditions prescribed in the lease contract." See also *Sterchi Bros.* v. *Mitchell*, 49 *Ga. App.* 826 (176 S. E. 537).

The instrument now under consideration is a lease for 99 years at the election of the lessee, absolute for the first year and optional with the lessee as to future continuance under the terms and conditions prescribed in the lease contract. It does not follow, however, that simply because the lease is for a period of more than five years, an estate for years is created and becomes vested in the lessee. We are aware of the fact there is dictum to the effect that a leasing for five years or more does, without more, vest an estate for years in the lessee; notably in *Schofield* v. *Jones*, 85 *Ga.* 816 (supra), and *Anderson* v. *Kokomo Rubber Co.*, 161 *Ga.* 842 (supra). In the *Schofield* case, the language was purely obiter, and in the *Anderson* case, the language seems to be obiter, but if not, the decision is by a divided court. In the earlier case of *Johnson* v. *Brice*, 151 *Ga.* 472 (supra), this court had under consideration a lease contract covering a period of fifteen years, and in a full-bench decision, in which all the Justices concurred, said: "The court did not err in holding that the contract between Brice and A. R. Hardison was one of landlord and tenant, and that it did not create an estate for years." See also *Griffith* v. *Smith*, 155 *Ga.* 717 (supra).

The Code, § 61-101 provides: "When the owner of real estate grants to another simply the right to possess and enjoy the use of such real estate, either for a fixed time or at the will of the grantor, and the tenant accepts the grant, the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct, which he

may not convey except by the landlord's consent and which is not subject to levy and sale; and all renting or leasing of such real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, and to pass no estate out of the landlord, and to give only the usufruct, unless the contrary shall be agreed upon by parties to the contract and so stated therein." There is no language in this Code section that can be construed to mean that a leasing for five years or more does, without more, vest an estate for years in the lessee. This provision of the law is simply that a lease for less than five years can not create an estate for years unless expressly agreed upon and stated in the contract or lease. If the period of rental is for more than five years, whether or not an estate for years is created and vests in the lessee, must depend upon the language of the lease contract and the intention of the parties. Under the very terms of this Code section, no estate for years can be created or become vested in the lessee, regardless of the number of years involved, when "simply the right to possess and enjoy the use of such real estate is granted or conveyed." The Code, § 85-803, provides: "An estate for years carries with it the right to use in as absolute manner as a greater estate, but not to the injury of the property or the person entitled either in remainder or reversion; the acts of omission and commission prescribed as grounds of forfeiture of an estate for life shall operate to the same effect as against a tenant for years." From what has been said above, since the period covered by the lease in the instant case is for more than five years, whether the lessee holds an estate for years, or merely a usufruct in the property, must be determined by a consideration of the quantity and quality of the lessee's rights under the lease agreement. It will be observed that the statute herein cited provides that the properties owned or held by the University System may be sold, leased, "or other wise disposed of . . provided, that the Board of Regents shall first determine that such property can no longer be advantageously used in the University System." The resolution of the Regents, in which it was declared that the property could not be longer advantageously used in the University System contained this language; "And that the leasing of this land as now contemplated is for the best interest of the University System." This language clearly indicates that the Regents had no intention of part-

ing with the title to or control of this property. The lease agreement provides that the property can be used for one purpose only, to wit: The construction of a fraternity chapter house; provides both a minimum and maximum cost for the house; obligates the fraternity to abide by the rules and regulations of the Regents; prohibits the sale or rental of the property to anyone except another fraternity existing and operating at the University of Georgia; requires the lessee to keep the buildings "in repair so that the premises will present a good appearance and not detract from the appearance of the properties and other buildings of the University of Georgia;" obligates the lessee to pay for all services rendered or furnished, except the payment of taxes, which is significantly omitted. The evidence discloses that the property is completely surrounded by property of the University of Georgia, except on one side where the boundary is a railroad right of way. There is no ingress or egress other than over the property of the University. Can it be said that a lease, conveying the privilege of occupying and using premises under such strict supervision, prohibitions, and regulations rises to the dignity of an estate in land? We think not.

So far as we have been able to ascertain, all cases decided by this court or the Court of Appeals, in which leasehold estates for more than five years have been held to create estates for years, have been upon lease contracts in which a full right of control and possession was conveyed, and the restrictions contained in the lease now under consideration did not appear. Certainly it can not be said that the prohibitions appearing in this lease contract appeared in any of the cases cited in the majority opinion.

The majority opinion refers to certain isolated sentences in the contract as indicating an intention to convey more than a usufruct, as follows: "The Association may transfer, sell, and convey to any other fraternity existing and operating at the University of Georgia at any time during this lease all rights of the Association in said lot and premises," and "other than hereinbefore stated, the Association shall have no right to sell, lease, or convey the said premises." It will be readily observed that these provisions are in no sense conveying or granting provisions of the contract. If no transferable interest in the property has been conveyed to the lessee by the terms of the contract, then there is nothing to transfer or convey. When we look to what was actually conveyed by the

terms of the contract, we fail to find any transferable interest conveyed by the granting clause. These terms could mean nothing more than that the lessee had a limited right to transfer the lease itself. What has just been said may also be said with reference to the quoted provisions of the loan agreement. We think further that such provisions were simply meant to make doubly sure that the buildings erected should be and remain the property of the University System. In so far as the one-dollar consideration referred to in the majority opinion is concerned, we think it would be "at least somewhat unusual" for the University of Georgia to convey an estate for years to this property, located on the University campus, for so small a consideration. We think, however, that the building to be erected was a part of the rental, and it will be noted that the contract did not merely extend the right or privilege to erect the building, but this was a requirement of the contract.

So far as the provision of the loan agreement providing for the sale of the property at public outcry, referred to in the majority opinion, is concerned, it will be remembered that the lease contract provides that the rights of the lessee can be conveyed only to a fraternity existing and located at the University of Georgia. In other words, there would be a public sale at which the public could not bid or buy.

We think that the contract, "looking to its four corners," conveys to the fraternity corporation simply a usufruct, which is not subject to levy and sale. In our opinion it was error to overrule the motion for new trial.

I am authorized to say that Chief Justice Bell concurs in this dissenting opinion.