## 32270. MARTIN et al. v. HEARD et al.

PER CURIAM.

The plaintiffs appeal from a judgment rendered in favor of the defendants refusing to reform a warranty deed and refusing to issue an injunction.

On October 19, 1970, Mr. Coy Martin executed an option to Waymon Heard Farms, Inc., to convey 612 acres of land "reserving a life estate for himself and his wife on 12 acres which is to include the home site" and reserving "for himself and his wife personal fishing and recreational privileges." Heard Farms exercised the option. The warranty deed, however, does not describe the reservations in the same terms as the option. Following a description of the 612 acres, the deed provides: "Grantor reserves unto himself and his wife the right to reside in the residence located on the following described property for and during their natural life." A description of the 12 acres follows and then a forfeiture clause: "In the event that the grantor or his wife should discontinue the use of the house on the above described property for their personal residence, then and in that event all rights herein reserved will be forfeited to the grantee." The next paragraph reads: "Grantor and his wife further reserve unto themselves the right to fish on the property being conveyed herein, during their natural life."

In 1975 the Martins learned of the variances between the reservations in the option and the reservations in the deed. They filed suit to reform the deed to conform with the option and to enjoin Mr. Heard and the Heard corporation from interfering with the Martins' exercise of their rights. After a trial without a jury, the court held the deed valid as written, and interpreted the forfeiture clause to mean that if either Mr. or Mrs. Martin discontinued use of the property by death or otherwise, the remaining party would have to vacate the property within a reasonable time. The court also held that the Martins, rather than Heard, were responsible for the property taxes on the 12 acres until their right to occupy the land terminated. Finally the court ruled that the reservation of fishing privileges to the Martins terminated when their right to use the 12 acres ended. The Martins appeal.

1. Equity will reform a deed to correct a mistake which arises from ignorance, surprise, imposition, or misplaced confidence. This power, however, shall be exercised with caution. Code Ann. § 37-202. If a party by

reasonable diligence could have known the truth, equity will not relieve. Code Ann. § 37-211. Here there is no evidence of mutual mistake or fraud on the part of Heard. Mr. Martin either read the deed before signing it or had ample opportunity to do so. The trial court did not err in refusing to reform the deed.

2. We conclude that the Martins each have a life estate subject to divestiture in the house and acreage and not a mere usufruct.

The appellant owned a large tract of land, conveying out of himself title to all except the interests reserved. He reserved unto himself and his wife "[T]he right to reside in the residence located on the following described property for and during their natural life." Then the deed described a definite 12.5 acres of land carved out of the larger 612 acre tract. The term of the reservation was for life, subject to forfeiture only if the grantor or his wife should discontinue the use of the house on the property for their personal residence. It is not reasonable to conclude that these parties who owned the land in fee, intended to reduce their rights thereon to rights comparable to those that may be granted to a tenant. Although the reservation is not as clear as the words contained in the original option to sell, they are clear enough to indicate that the granting parties were reserving to themselves, full use and enjoyment of the house for their life time.

In the case of *Marshall v. Cozart,* 94 Ga. App. 614 (29 SE2d 419) (1944), the will of the owner of the house provided: "I give, devise and bequeath my home place, No. 1700 Fifth Avenue, Columbus, Georgia, to my mother, Lila Parker, for and during her natural life, with the remainder to my son, William Henry Mahone. Even though I have given a life estate in my home place, No. 1700 Fifth Avenue, Columbus, Georgia, to my mother, it is my wish that my husband, George Marshall, be permitted to reside in said residence as long as he shall live and remain unmarried."

The Court of Appeals in that case specifically held that these words created a joint life estate in Lila Parker and George Marshall in the property. Usufructs are rights or privileges usually arising out of landlord and tenant

relationships, and with privileges granted to tenants holding less interest in real estate than estate for years. Code Ann. § 61-101.

3. We also conclude that the condition upon which the life estates terminate occurs when the Martins *both* cease living on the property, whether by both vacating it or by the death or removal of the survivor of them. This conclusion follows in part from a reading of the testimony of the attorney who drew the deed, who stated that it was the parties' intent to incorporate into the deed in substance the same provisions as were contained in the option contract. The mere fact that the estate may terminate on some condition earlier than death does not destroy its character as a life estate. Id. Code Ann. § 85-603.

4. We agree with the trial court's conclusion, that the reservation was that of a life estate, subject to being divested, and therefore the life tenant should return and pay the applicable taxes on the land and improvements during the period of time it is occupied by them.

5. The Martins contend that the trial court erred in construing the reservation of fishing privileges so that it would terminate when their right to use the 12 acre tract ended. The language of the fishing privileges reservation is clear and unambiguous. It is personal to the Martins, does not extend to others, and exists for their lives. There is no indication that the fishing privileges would cease if the Martins abandoned the house as their residence. The trial court erred in holding to the contrary.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Nichols, C. J., Undercofler, P. J., and Hill, J., who dissent from Divisions 2 and 4 but concur in Divisions 1 and 5 and concur specially in Division 3, and Jordan and Bowles, JJ., who dissent from Division 3.*

ARGUED MAY 10, 1977 — DECIDED SEPTEMBER 28, 1977 — REHEARING DENIED OCTOBER 20, 1977.

*Porter & Lehman, J. Richard Porter, III,* for appellants.

*Conger & Conger, J. Willis Conger,* for appellees.

HILL, Justice, dissenting.

Notwithstanding the court's express declaration (Division 1 of the opinion) that the deed is not to be reformed to conform to the option, this court has conformed the deed to the option. The rules stated in Division 1 of the opinion ought to be applicable to this court as well as the trial courts.

A usufruct is the right to use and enjoy property of another. *State v. Davison,* 198 Ga. 27, 37 (31 SE2d 225) (1944). Hence a tenant is said to have a usufruct in the land of his landlord, — a right to use and enjoy. Code § 61-101. However, a right to use and enjoy another's property may arise between parties who are not in a landlord-tenant relationship.

In *Marshall v. Cozart,* 94 Ga. App. 614 (95 SE2d 729) (1956), the only decision cited by the majority, the testator devised her home to her mother "for and during her natural life, with remainder" to her son. The testator went further and said: "Even though I have given a life estate in my home . . . to my mother, it is my wish that my husband . . . be permitted to reside in said residence as long as he shall live and remain unmarried." *Marshall,* supra, p. 618.

After finding that a precatory trust had been created by the testator, the Court of Appeals said that a dispossessory warrant would not lie to dispossess the widower because the will "in effect created a joint life estate" rather than a landlord-tenant relationship. Contrary to what the majority now say, the Court of Appeals did not find that the widower in *Marshall* had a life estate. It found that the widower "in effect" had a life estate.

The testator in *Marshall* clearly knew what a life estate was and had devised a life estate to her mother and had not devised a life estate to her husband. The Court of Appeals did not say to the contrary. That court merely said that the widower had rights for life, or until his remarriage, just as if he had been given a life estate.

The majority have misread the only decision cited and have misconstrued the will in that case. I submit that

when this court has before it a will like the *Marshall* will, it will then, as it should, construe that will correctly and will refuse to follow today's interpretation of *Marshall v. Cozart.*

Turning to the case now before us, it can be seen that there is no authority cited for the majority's declaration that the grantor reserved a life estate for himself and his wife. Let us look then at the language used in the deed to determine the intent of the parties and the nature of the interest reserved. "Grantor reserves unto himself and his wife the right to reside in the residence located on the following described property for and during their natural life." A "right to reside" is a right to use and enjoy, a usufruct, not an estate in land.

The majority are reforming this deed. The law made by the majority will have to be reformed later.

BOWLES, Justice, dissenting.

I dissent from Division 3 of the opinion.

The forfeiture clause plainly said: "In the event that the grantor herein *or* his wife should discontinue the use of the house on the above property for their personal residence, then and in that event all rights herein reserved shall be forfeited to the grantee herein." (Emphasis supplied.) The trial court concluded that the plain language of this clause meant "that should either the husband or wife discontinue the use of the house, either voluntarily or involuntarily, which would include death of one of them, that the life use of the residence and the tract of land on which it is situated would be terminated." I think the trial court was correct in so holding.

I am authorized to state that Justice Jordan joins in this dissent.