## 35682. ROE v. DOE.

HILL, Justice.

This ejectment action was brought by "John Doe," the "fictitious lessee" of Motel Associates of Atlanta, to eject Mr. and Mrs. Paul Jones from a penthouse apartment on the seventh floor of the Best Western White House Hotel in Atlanta. The White House Hotel stands partially on property which Paul Jones owned in 1962. In November, 1962, Jones entered into a long term lease to developers who were to remove the then existing structure (the Jones Building) and construct a multi-story hotel-motel building.[1]

Paragraph 5 of the lease provides: "Optionor-Owner-Lessor [Jones] agrees *to join* with the said Optionees-Lessees or their assigns and *grant an in rem mortgage* or other type security device on said hereinabove described property, for both the interim and permanent financing needed for the construction of the said multi-story structure, and further to agree therein that any right he may have *as Lessor* of said property be subordinate to the holders of the mortgage or other type security device given for the interim and permanent financing of said structure. It is further agreed and understood that the said Optionor is not in any way to be personally obligated on any such in rem mortgage or other type security device given in accordance with the terms outlined hereinabove, the Optionor's obligation thereon only being to the extent of his interest in said hereinabove described property." (Emphasis supplied.) Paragraph 6 provided: "As further consideration of this Option and for the Lease, the said Optionees herein agree to furnish to the said Optionor herein and his wife, personally, a penthouse apartment . . . at no charge to the said Optionor or his wife for the remainder of his and/or her life. . ."[2] An amendment to the lease, executed on the day the option was exercised, provided that the lease created an estate for years, specifically 99 years. In Paragraph 8 the amendment provided: "Lessor may rent or sublet the penthouse and office to any person, natural or artificial, for any term of years. Lessee must approve the tenant. Approval must not be unreasonably withheld." (This does not prohibit conveyance by the lessee, see Code § 61-101; it

---

[1] The lease was incorporated into an Option to Lease executed in April, 1962; the optionees exercised the option in November, 1962, thereby converting the Option to Lease into a lease. For earlier litigation involving this lease, see *Jones v. Abraham,* 109 Ga. App. 622 (137 SE2d 92) (1964).

[2] The lessees also agreed to furnish the Joneses with space in the lobby for a ticket office, but that provision is not at issue here except to note that it was expressly provided that the office would be subject to the loan deeds.

merely gives the lessor a right to disapprove an unacceptable tenant.)

In April 1963, the original lessee, Alpha Investment Company, Inc., executed a deed to secure debt and note in the amount of $2,600,000 to Fulton National Bank; the deed recites that Paul Jones "joins in the execution of this mortgage in order that title may be conveyed to the mortgagee," and is followed by a recital that he was not personally liable for payment of the debt. By August 31, 1967, this deed to secure debt was held by Republic National Life Insurance Company and the leasehold estate, formerly held by Alpha Investment Company, was held by Parliament House of Atlanta Associates, Ltd., which had assumed that indebtedness on the original deed to secure debt. On that date, Republic National and Parliament House executed an additional deed to secure debt and note in the amount of $900,000. Paul Jones again signed the deed to secure debt as follows: "The undersigned, Paul Jones, to fulfill his obligation under lease [to Alpha Investment Co.] and in consideration thereof, joins in the execution of this Deed to Secure Debt in order that his fee simple title in a portion of the within described property may be conveyed to the Lender, but with the understanding that he is in no way personally liable for the payment of the debt which is secured by this Deed to Secure Debt."

On May 30, 1973, Paul Jones conveyed his interest in the property to Rec Macon Corporation; this deed was expressly made subject to the two prior security deeds. The deed to Rec Macon also recited: "This conveyance is made subject to the reservation to Grantor, Paul Jones, and to the present wife of Grantor, Mrs. Frances Jones, for the remainder of his life, and/or the life of his said wife, Mrs. Frances Jones, of the penthouse apartment. . ."[3] In 1976, Republic National foreclosed on its two deeds to secure debt, bought in the property, and in 1977 deeded it to Motel Associates of Atlanta. Motel Associates then filed this ejectment action in fictitious form, *John Doe v. Richard Roe,* against the Joneses. The trial court granted the plaintiff's motion for summary judgment.

1. Relying on *Martin v. Heard,* 239 Ga. 816 (238 SE2d 899) (1977), Jones argues that he reserved a life estate for himself and his wife in the 1962 lease agreement. We disagree. *Martin v. Heard,* supra, is inapposite on this point because the grantor there used the term "reserves"; here, the lessee agrees "to furnish" an apartment to the Joneses. It is clear that the Joneses' interest in the apartment is by way of grant from the lessee (the holder of the estate for years)

---

[3]Jones did not attempt to reserve any interest in the office. See fn. 2, supra.

since the lease provides that the furnishing of the apartment is part of the consideration provided by the lessee and that the apartment could not be sublet without the lessee's approval of the sublessee.

This leaves the question of whether the lessee granted the Joneses an estate in the property or a usufruct. On this point, Jones' reliance on *Martin v. Heard,* supra, is justified. There this court held, in determining that the Martins had a life estate and not a usufruct, "It is not reasonable to conclude that these parties who owned the land in fee, intended to reduce their rights thereon to rights comparable to those that may be granted to a tenant." *Martin v. Heard,* supra, 239 Ga. at 818. There the instrument described either a life estate subject to divestiture or a usufruct, because the conveyance spoke of the "right to reside" in a residence for life (so long as Mr. and Mrs. Martin continue using the house). "Usufructs are rights or privileges usually arising out of landlord and tenant relationships, and with privileges granted to tenants holding less interest in real estate than estate for years." Id., 818—819. Here there is no mention of "rights" or "privileges" but rather a promise to furnish the Joneses an apartment for their lifetimes. Although we disagree with Jones' position that he *reserved* a life estate, we do agree that it would be unreasonable to infer from the language before us that he bargained for a mere usufruct as opposed to an estate for life. This conclusion is buttressed by Code Ann. § 61-101, which presumes that a tenancy for *less* than five years is a usufruct. That this sublease would most probably last substantially longer than five years was no doubt contemplated by all concerned. The lease was drafted by the developers and if they intended to convey only a usufruct, they could have made their intent clear.

Motel Associates argues that the lessee had only an estate for years and hence could not grant the Joneses a greater estate (a life estate). That the Joneses' life estates would terminate at the expiration of 99 years, and hence were subject to divestiture if they lived more than 99 years, does not prevent the lessee from granting them a life estate subject to divestiture, *Martin v. Heard,* supra; Code § 85-901, particularly where, as here, Jones was the owner of the fee at the time the lease was executed. The facts that the Joneses may have looked to the lessee for repairs and that taxes may not have been paid on these life estates are not controlling.

2. Motel Associates argues, however, that Paul Jones subordinated his interest in the apartment to the interest of the holders of the security deeds. We agree. When Jones agreed to join the lessees in granting an in rem mortgage to finance construction of the hotel, he agreed to subordinate all of his interest in the

property. See the first provision of paragraph 5 of the lease, supra. It is unnecessary to decide whether his further agreement to subordinate his interest "as Lessor" would suffice to subordinate his interest as sub-lessee since that clause is not a limitation on the prior promise to grant an in rem mortgage. Furthermore, Jones actually did "join" the two security deeds at issue.[4] Thus his interest in the apartment was subject to foreclosure and was in fact foreclosed upon. We find no ambiguities in the documents as to the intent of the parties which would warrant trial by jury and hence the trial court did not err in granting summary judgment for Motel Associates against Paul Jones.

3. The parties agree, however, that Mrs. Jones is not a signatory on any of the documents quoted, supra. Motel Associates' argument that Mrs. Jones' interest is somehow subordinate to or a derivative of, the interest of her husband cannot be sustained. The "intent of the parties" cannot affect her interest, and she is not estopped by construction of the motel from asserting her rights. If this argument were valid against Mrs. Jones, it would have been unnecessary for Mr. Jones to join in the security deeds. Thus Mrs. Jones is the holder of a life estate (subject to divestiture at the end of 99 years) in the apartment and her estate was recorded prior to the execution of any of the security deeds involved here. For this reason *Williams v. Federal Land Bank,* 44 Ga. App. 606 (162 SE 408) (1931), and *Filsoof v. Chatham,* 144 Ga. App. 464 (241 SE2d 582) (1978), relied on by Motel Associates, are inapposite, and the holders of the security deeds took subject to her interest in the property.

4. Motel Associates also argues that the description of the apartment was vague, uncertain, and legally insufficient to convey any interest. The 1962 lease agreement, as amended, contained the following description: "a penthouse apartment which is to include one (1) master bedroom, which shall not be less than 15 x 15, one (1) additional bedroom, one (1) kitchen, living room, and two (2) full baths. Said penthouse apartment shall be located in the southwest corner of the building, facing Houston Street." Motel Associates argues that this description is legally insufficient because "it does not contain a starting point, nor any metes or bounds, or any other appropriate description to identify the property. . ." We do not agree

---

[4]Even if Jones' endorsement on the second security deed could be read by itself as limited to a conveyance of his fee and not of his sub-lease, Jones' interest in the apartment was subordinated to the first security deed, and it was foreclosed. Also, we do not agree with Jones that his signing under an endorsement precluded the mortgagors from exercising the power of sale in the security deeds. Jones "joined" the execution and thereby agreed to the power of sale.

that it is insufficient in this case. The apartment is in a building located on land which is described and there is no dispute about which apartment was leased to the Joneses. A description will not be declared void for uncertainty if it furnishes the key to identification of the property conveyed. *Price v. Gross,* 148 Ga. 137 (2) (96 SE 4) (1918). Motel Associates argues that the description fails because it was too vague to be enforced during the interim between execution of the lease and construction of the apartment. But whether the Joneses would have had any remedy had the apartment not been constructed is not before us. What is before us is whether a plaintiff can rely on vagueness of the legal description to eject a tenant when at the time the plaintiff in ejectment acquired the property, the tenant was in possession under a recorded lease and the vagueness had been cured so that the description was adequate to give the plaintiff notice. We find that he cannot. *Wall v. Louisville & Nashville R. Co.,* 143 Ga. 417 (85 SE 325) (1915).

5. In their answer to the complaint, the Joneses stated as a defense that the action should be dismissed because it was not brought by the real party in interest against a real person with capacity to be sued.[5] In their brief on appeal, they argue "the trial court should have . . . dismissed the case or entered an order granting the real party in interest leave to ratify, substitute or join the action, and granting Appellant appropriate time for discovery against the new party plaintiff."

We find persuasive the Joneses' argument that the common law practice of using fictitious forms in ejectment, as codified at Code Ann. § 33-111, was vitiated by the enactment of the Civil Practice Act, Ga. Laws 1966, p. 609, as amended. Code Ann. § 81A-101 provides that the Civil Practice Act shall govern the procedure in all courts of record in all suits of a civil nature, except as provided in § 81A-181 (infra). Code Ann. § 81A-102 provides that there shall be one form of action to be known as "civil action." Code Ann. § 81A-117 (a) provides that every action shall be prosecuted in the name of the real party in interest. (That section also provides for substitution of the real party in interest where an action is not prosecuted in the name of the real party in interest.) Code Ann. § 81A-110 (a) provides that the title of the complaint shall include the names of all the parties (where the names of the parties are known). Although Code Ann. § 81A-181, supra, originally excepted Ga. Code Title 33, Ejectment (Ga. L. 1966, pp. 608, 668), that section now

---

[5]This issue was not raised in *Doe v. Roe,* 234 Ga. 127 (214 SE2d 880) (1975), or *Roe v. Doe,* 233 Ga. 691 (212 SE2d 854) (1975).

provides that the CPA "shall apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law, but, in any event, the provisions of this Title governing the sufficiency of pleadings . . . making parties . . . shall apply to all such proceedings." (See Ga. L. 1966, pp. 609, 668, as amended by Ga. L. 1967, pp. 226, 241, as amended by Ga. L. 1968, pp. 1104, 1109).

We hold that Code Ann. § 33-111 was repealed by the adoption of the Civil Practice Act and the 1968 amendment to Code Ann. § 81A-181 (see Pindar, Ga. Real Est. Law § 23-1, p. 896 (2nd ed. 1979)), and an ejectment action brought in the fictitious form is subject to substitution of the real party in interest or dismissal as provided in § 81A-117 (a), supra.[6]

Although we agree with the Joneses that the fictitious form of ejectment is no longer available in Georgia, we do not agree that this finding mandates reversal in this case. Here the Joneses' answer shows that they knew the true identity of "John Doe" from the inception of the litigation; likewise, they knew the basis on which Motel Associates asserted a claim of title. They have not shown that they suffered any disability in defending that can be caused to a defendant by use of the fictitious form of ejectment. See Pindar, Ga. Real Est. Law § 23-7, p. 900 (2nd ed. 1979). Since this is a case at law in which the issue of title turns on the construction of documents in the record and there has been no suggestion that there are any other documents pertinent to our inquiry, we decline to remand for further discovery as to the real party in interest.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

ARGUED JANUARY 15, 1980 —
DECIDED JUNE 17, 1980 —
REHEARING DENIED JULY 2, 1980.

*Troutman, Sanders, Lockerman & Ashmore, Jeffrey R. Nickerson,* for appellant.

*Smith, Cohen, Ringel, Kohler & Martin, Andrew J. Hinton,* for appellee.

---

[6]Similarly, Code Ann. § 24-3344 was repealed by adoption of the CPA and the 1968 amendment to Code Ann. § 81A-181, Ga. L. 1968, pp. 1104, 1109, supra.