A98A1831. PERIPETY GROUP, INC. v. SMITH.
(514 SE2d 262)

POPE, Presiding Judge.

The Peripety Group, Inc., agreed to lease space in a shopping center to the Ladies Workout Express of Covington, Georgia, Inc., for use as a women's fitness center. Eighteen days after the parties entered into the lease, Ladies Workout President William Smith sent a letter to Peripety stating that he wanted to withdraw from the lease and would notify Peripety if the situation changed. Approximately two and one-half months later, on March 9, 1995, Peripety and Ladies Workout executed a memorandum that provides:

> This letter serves as permission to erect a banner for Ladies Workout Express at Suites 2, 3, 4 at Covington Crossings Shopping Center for a period of thirty (30) days commencing on March 12, 1995 for the purpose of reserving membership for the opening of Ladies Workout Express. A total of 300 reservations will constitute the agreed upon number needed to proceed construction as per the Terms and Conditions of the Lease Agreement dated December 4, 1994 between The Peripety Group, Inc. and Ladies Workout Express of Covington, Georgia. Tenant will give written notice as to the number of reservations received and start construction immediately thereafter.

On July 18, 1995, Smith's agent, Frank Mullins, notified Peripety by letter that Ladies Workout would not proceed under the lease because it had been unable to obtain 300 membership reservations for the proposed fitness center, receiving only 168 reservations over a time period longer than the 30 days proposed in the parties' memorandum.

Thereafter, Peripety sued Smith d/b/a Ladies Workout Express for money allegedly due under the lease agreement. The lawsuit was tried before a judge sitting without a jury. Following the bench trial, the court entered judgment in favor of Smith. In its final order, the court made the findings of fact that the memorandum executed by the parties confirmed their agreement that Ladies Workout was not obligated to lease the premises absent 300 reservations and that Ladies Workout had only received 168 reservations. The court set forth two separate conclusions of law in the order: (1) the lease does

not sufficiently identify the premises to be leased, and (2) Smith is not obligated to pay rent because the rental commencement date, defined by the lease as the earlier of either 90 days after the premises were turned over to Ladies Workout or the date when Ladies Workout opened to the public, never occurred.

Peripety appeals from the judgment, challenging the trial court's conclusion that the lease does not sufficiently identify the premises and the court's finding that the memorandum modified the lease. We agree with Peripety that the court erred in ruling that the property description in the lease is deficient, but its challenge concerning the court's interpretation of the memorandum is without merit. Furthermore, Peripety has failed to contest the court's legal conclusion that the rental commencement date never occurred. Thus, in spite of the court's error regarding the property description in the lease, its final judgment is supported by two other grounds and must be affirmed.

1. Peripety correctly asserts the trial court erred in concluding that the lease does not sufficiently describe the leased premises. "Where the description of property in a lease agreement is indefinite, and contains no descriptive terms by the use of which the lands intended to be conveyed can be definitely located and identified, such instrument is fatally defective and void. [Cits.]" *Davis v. Ford*, 112 Ga. App. 175 (2) (144 SE2d 456) (1965). However, "[a] description [of leased premises] will not be declared void for uncertainty if it furnishes the key to identification of the property conveyed." *Roe v. Doe*, 246 Ga. 138, 142 (4) (268 SE2d 901) (1980).

In the instant case, section 1.1 (b) of the lease describes the leased premises as consisting of

> [t]hat portion of Shopping Center which is outlined in red on the floor plan, or plans, marked Exhibit 'B,' hereto attached. The premises are deemed to contain approximately 3,600 square feet of Gross Rentable Area, being approximately 60 feet of frontage and approximately 60 feet of depth extending to the center line of the party walls and to the exterior faces of all other walls. . . .

The term "Shopping Center" is defined in lease section 1.1 (a) as including,

> (i) The real estate depicted or described on Exhibit "A," hereto attached; (ii) such contiguous real estate as Landlord may from time to time designate in writing as being included in Shopping Center; (iii) the buildings and improvements constructed on such real estate substantially in accordance with Exhibits "B" and "C," attached hereto,

together with all alterations and additions thereto; and (iv) such improvements as may be constructed on such real estate after the Rental Commencement Date.

Although Smith did not testify at trial and presented no evidence that he was unclear as to what premises were being leased, the trial court held that the lease is fatally defective because it does not provide a key to identification of the leased premises. The court relied in particular upon the fact that neither the main body of the lease nor Exhibits A and B identify the address, city, county, or state in which the shopping center is located. But contrary to the court's holding, the guaranty executed by Smith, which is attached to the lease as Exhibit F and expressly incorporated into the lease, identifies the leased premises as "Covington Crossings Shopping Center, Highway 278, N.W., Suite 2, 3, 4, Covington, Georgia 30209." This description in the guaranty, which is to be construed as a part of the lease, clearly provides a key to identification of the leased premises. See *Roe*, supra at 141-142 (upholding description identifying leased premises as a penthouse apartment located in the southwest corner of the building and facing Houston Street); *Davis*, supra (upholding description identifying leased premises as 2.71 acres of land on the Bob Ford old home place in the sixth land district of Tift County, Georgia, to be planted with tobacco and having been pointed out by landlord).

In finding the property description to be deficient, the trial court also relied upon the fact that section 1.1 (b) of the lease uses the word "approximately" to describe the dimensions of the leased premises. However, this provision is merely descriptive of the size of the leased premises, which are more particularly identified as "[t]hat portion of Shopping Center which is outlined in red on the floor plan, or plans, marked Exhibit 'B,' hereto attached." In addition, while not giving exact measurements, section 1.1 (b) notes that the leased premises extend to "the center line of the party walls and to the exterior faces of all other walls." Finally, Exhibit F identifies the leased premises as suites 2, 3, and 4 of the shopping center. Taken together, and particularly considering that there is no dispute about which suites were to be leased to Ladies Workout, these items clearly furnish keys for the identification of the premises intended to be embraced within the lease. See *Roe*, supra; *Davis*, supra. Accordingly, the trial court erred in holding that the lease did not adequately identify the premises.

2. Peripety claims the court erred in finding the memorandum executed by the parties on March 9, 1995, modified the lease. This claim is without merit. Contrary to the claims of Peripety and the dissent, the trial court properly interpreted the meaning and effect of the memorandum.

The lease provides in Article 22.5: "This lease contains the entire agreement between the parties and no agreement, representation or inducement shall be effective to change, modify or terminate this lease in whole or in part *unless in writing and signed by the parties.*" (Emphasis supplied.) The memorandum in question was written from Peripety to Ladies Workout and was signed by both parties. Thus, the court was authorized to find that the memorandum is a valid written modification of the lease.

That written modification expressly provides that over a 30-day period "[a] total of 300 reservations will constitute the agreed upon number needed to proceed construction as per the Terms and Conditions of the Lease Agreement. . . ." The trial court correctly found that this plain and unambiguous language memorializes the parties' agreement that they would not proceed with construction under the lease terms without 300 membership reservations. See generally *Archer v. Carson*, 213 Ga. App. 161, 163-164 (2) (444 SE2d 82) (1994).

The lease terms regarding construction are set forth in Article II of the contract and expressly provide that *both* the landlord and the tenant have construction obligations on the property that affect the tenant's obligations to accept possession of the property and open for business. Thus, both parties, not just Ladies Workout, had an interest in proceeding with their construction obligations under the lease terms only if the Ladies Workout fitness center would be a viable business, as evidenced by at least 300 membership reservations.

Because the undisputed testimony at trial showed that there were fewer than the agreed upon 300 reservations, it was to the parties' mutual benefit not to proceed with the lease agreement. The memorandum amending the lease did not, as contended by the dissent, give the tenant a unilateral right to terminate the lease; instead, it amounted to a mutual agreement to terminate the lease if there were not enough reservations. The trial court's interpretation of the amendment to that effect was not erroneous and provides a correct legal and factual basis for its final judgment in favor of Smith.

3. Peripety has not, in its enumerations of error or brief, challenged the propriety of the trial court's legal conclusion that the rental commencement date defined by the lease did not occur. Even though Peripety has not raised this issue on appeal, the dissent attempts to address it.

The dissent justifies its consideration of an issue not raised by the appellant by claiming it is apparent that the trial court's legal conclusion that the rental commencement date did not occur is based on its finding that Smith validly terminated the lease pursuant to the parties' memorandum agreement. Contrary to the dissent's claim, it is not apparent that the court's conclusion regarding the

rental commencement date is premised on its finding that the lease was terminated pursuant to the memorandum agreement. First, the trial court makes no such statement in its written judgment; the court never proclaims that the rental commencement date did not occur because the contract had been terminated under the terms of the memorandum agreement. In addition, regardless of the memorandum, there is ample evidence in the record from which the court could have found that the plain terms of the rental commencement date were never met; that is, the premises were never turned over to Smith and the premises were never opened to the public.

Despite the dissent's position, the matter of the trial court's legal conclusion regarding the rental commencement date is not properly before us. "[O]ur review is limited to those matters enumerated and argued by an appellant[.]" *Sullivan v. State*, 235 Ga. App. 768, 771 (510 SE2d 136) (1998). Because the matter of the rental commencement date addressed by the dissent is not enumerated or argued by Peripety, it should not be considered by this Court as a basis for reversing the trial court's judgment. See *Harwell v. State*, 231 Ga. App. 154, 158 (4) (497 SE2d 672) (1998); *Norman v. State*, 197 Ga. App. 333, 336 (4) (398 SE2d 395) (1990). Consequently, even though the trial court erred in its first legal conclusion concerning the property description in the lease, the second legal basis for the court's judgment has not been challenged and thus still provides support for the judgment.

*Judgment affirmed. Beasley, P. J., Blackburn and Eldridge, JJ., concur. McMurray, P. J., Andrews and Ruffin, JJ., dissent.*

RUFFIN, Judge, dissenting.

Because I believe the trial court based its ruling on erroneous legal theories, I respectfully dissent.

I fully agree with the majority that the trial court erred in holding that the lease was void for failing to adequately describe the leased premises. The second reason given by the trial court for its ruling was that "[t]he conditions precedent to the obligation of the Defendant to pay rent to the Plaintiff were not satisfied because the Rental Commencement Date did not occur. Accordingly, no recovery can be had by [Peripety]." The Rental Commencement Date was defined as the earlier of (1) 90 days after turnover of the premises to Ladies Workout Express (LWE) or (2) the date when LWE opened the premises to the public. According to the trial court, because neither of these events occurred before the lease was terminated, defendants' obligation to pay rent never accrued.

It is apparent that, in ruling for defendants on these grounds, the trial court based its decision on its finding that defendants validly terminated the lease pursuant to the March 9, 1995 memoran-

dum before the occurrence of the Rental Commencement Date, and hence before any sums were due under the lease. On appeal, Peripety contends that the trial court erred in holding that the memorandum authorized termination by the tenant.

As an initial matter, the court's interpretation of the memorandum as creating an additional condition precedent to defendants' liability under the lease — in effect giving defendants an option to terminate the lease — appears improper. The lease itself provided that defendants agreed to accept the premises "as is." Although defendants agreed to perform certain additional construction and Peripety agreed to provide a construction allowance for such work, these construction obligations clearly did not constitute conditions precedent to the parties' liability under the lease. The mere fact that the March 9 memorandum may have placed an additional condition on the parties' construction obligations thus does not necessarily indicate that the parties intended to give defendants the unilateral right to *terminate* the lease if such condition was not met.

In concluding that the memorandum created an additional condition precedent to defendants' liability under the lease (as opposed simply to their obligation to perform additional construction), the trial court must have relied on parol evidence as to the parties' intent rather than on the language of the memorandum. However, while "parol evidence is admissible to explain an ambiguity in a written contract, . . . such evidence is inadmissible to *add to*, take from, or vary the writing itself." (Emphasis supplied.) *Thomas v. American Global Ins. Co.*, 229 Ga. App. 107, 109 (2) (a) (493 SE2d 12) (1997). Although parol evidence might have been admissible to explain an ambiguity relating to the parties' construction obligations, the trial court in essence added an additional term to the memorandum by holding that it effectively gave defendants the right to *terminate* the lease under certain conditions. Furthermore, because the original lease was for a period of more than one year, the lease and any modification thereof were required to be in writing. *B-Lee's Sales Co. v. Shelton*, 141 Ga. App. 870-871 (1) (234 SE2d 702) (1977). "[A] contract which the statute of frauds declares must be in writing can not rest partly in writing and partly in parol." (Punctuation omitted.) Id. at 871.

Moreover, the only parol evidence supporting the trial court's conclusion as to the parties' intent came from the testimony of Mullins, defendants' real estate agent. Although Mullins testified that he was "involved in the negotiations of the banner," he did not claim to have first-hand knowledge of any agreement that the tenant could terminate the lease if a certain number of reservations were not received. Rather, he testified that

> *my understanding* was that Bill Smith met with Donna Woods at the site and they — [hearsay objection raised by Peripety]. Well, what I was going to say is, this was generated from a meeting that *I understood* took place. If there were more than 300 people that actually reserved memberships with [the] club, then [LWE] would go forward. If there were anything less in a 30 day period, then they would not, and that was the agreement.

(Emphasis supplied.) It thus seems clear that Mullins' characterization of the alleged agreement is based on nothing more than hearsay. The defendant, Smith, who was the one supposedly at the meeting, did not testify at trial. Accordingly, to the extent the trial court relied on parol evidence to conclude that the parties agreed to an additional condition precedent, it erred in doing so, as neither the original lease nor the March 9 memorandum suggests the existence of such a condition.

In any event, even if the memorandum can be construed as creating an additional condition precedent, no consideration has been shown for such an agreement. "A written contract may be modified by a subsequent agreement, but such must be founded upon new consideration." *Ranger Constr. Co. v. Robertshaw Controls Co.*, 166 Ga. App. 679, 681 (1) (305 SE2d 361) (1983). The trial court did not find that the parties simply mutually agreed to terminate the lease, thereby involving the mutual surrender of rights and obligations by both parties. Rather, it found that the March 9 memorandum imposed an additional condition precedent to *defendants'* obligations under the lease — in essence, it found that the memorandum modified the lease to give defendants the unilateral right to terminate if they did not receive sufficient health club reservations. The memorandum imposed no additional obligations on defendants, as Mullins admitted, and gave no additional rights to Peripety. Accordingly, even if the memorandum can be construed in the manner the trial court selected, there is no evidence of any consideration to support the purported modification.

The trial court clearly based its holding that no amounts were due under the lease upon its erroneous conclusion that defendants validly terminated the lease before the Rental Commencement Date occurred. Since the lease was not validly terminated, defendants' unilateral repudiation of the lease does not relieve them of liability simply because the Rental Commencement Date had not yet occurred. A party to a contract cannot avoid liability by simply repudiating the contract before the time has expired for the other party to perform its obligations. "[W]hen one party to a bilateral contract of mutual dependent promises absolutely refuses to perform and repu-

diates the contract prior to the time of his performance, the innocent party is at liberty to consider himself absolved from any future performance on his part." (Punctuation omitted.) *Jones v. Solomon*, 207 Ga. App. 592, 593-594 (1) (428 SE2d 637) (1993). See also *Moore v. Deal*, 75 Ga. App. 823, 827 (2) (44 SE2d 571) (1947) (tender of performance unnecessary when under facts alleged it would have been futile). Accordingly, judgment was not required in favor of defendants simply because they unilaterally repudiated the lease before the occurrence of the Rental Commencement Date.

Because it is apparent that the trial court's decision was based on erroneous legal theories, I would reverse the trial court's judgment and remand the case for further consideration.

I am authorized to state that Presiding Judge McMurray and Judge Andrews join in this dissent.

DECIDED MARCH 19, 1999.

*John B. Degonia, Jr.*, for appellant.
*William A. Trotter III*, for appellee.