In re Floyd OLIVER, Individually, Debtor.

In re Layton OLIVER and wife, Joyce Oliver, Debtors.

In re OLIVER BROTHERS, a Partnership Composed of Floyd Oliver and Layton Oliver, Debtors.

In re OLIVER BROTHERS CORPORATION, a Texas Corporation, Debtors.

In re O–O, INCORPORATED, Debtor.

Floyd OLIVER, et al., Debtors-in-Possession, Plaintiffs,

v.

MBANK DALLAS, N.A., et al., Defendants.

Bankruptcy Nos. 584–50327, 584–50326 and 584–50322 to 584–50324. Adv. No. 586–5084.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Oct. 11, 1986.[1]

Jim Walters, Walters & Associates, Lubbock, Tex., for debtors.

J. Maxwell Tucker, Jr., Winstead, McGuire, Sechrest & Minick, Dallas, Tex., for MBank.

Steven Sakonchick, II, Sr. Atty., Austin, Tex., for Federal Land Bank.

1. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

Robert L. Jones, Crenshaw, Dupree & Milam, Lubbock, Tex., for Connecticut Gen. Life Ins., I.L. Files, Travelers Ins. Co., and Levelland Vegetable Oil.

Nancy Koenig, Asst. U.S. Atty., Lubbock, Tex., for Farmers Home Admin.

Kent Hale, Lubbock, Tex., for Linnie Pearl Hartin.

## MEMORANDUM OF DECISION CONCERNING RENT PROCEEDS

JOHN C. AKARD, Bankruptcy Judge.

### Procedural History

On December 26, 1984, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On June 27, 1986, the Debtors filed this Adversary Proceeding, naming seventeen parties defendant, to determine the rights of the parties to the rents from certain lease agreements. Under the agreements, the Debtors rented portions of their property to farmers for a one-year term. The Debtors asked the Court to grant them the resulting rents for use in their 1986 farming operations. The Debtors placed all rents in a separate, interest-bearing, account pending the Court's resolution of questions presented by the Debtors' Motion. On July 29, 1986 the Court authorized the Debtors to use a portion of the rents in their 1986 farming operations, or to use them as collateral for a loan for the 1986 farming operations. In any case, the proceeds must be reimbursed to the escrow account at the conclusion of the 1986 farming operations.

### Facts

In order to finance their extensive farming operations for 1985, the Debtors arranged a loan of up to $1,950,000.00 through MBank Dallas, N.A. (MBank). The parties agreed to a "Supplemental Order Authorizing the Debtors to Borrow Funds Secured by Property of the Estate, Authorizing Use of Cash Collateral and Determining Adequate Protection to be Provided to Secured Creditors" which the Court approved on March 15, 1985. Appar-

ently the 1985 farming operations were not as successful as the parties anticipated and approximately $390,000.00 plus interest remains unpaid on the obligation.

In 1986, the Debtors attempted to make a profit by leasing a substantial portion of their lands to other farmers for the 1986 crop year. The Court entered two Orders allowing such leases. The first, dated March 27, 1986, was entitled "Order Authorizing Debtors to Enter into One-Year Rent Agreements and Granting Other Relief." The second, dated April 17, 1986, was entitled "Order Approving First Amended Application for Authority to Enter into Rent Agreements Not to Exceed One Year." The leases provided for a cash down payment with the balance of the rent due no later than at the 1986 harvest. In each instance, the rent was set at a definite dollar amount rather than a portion of the crop produced. Pursuant to these Orders, the Debtors collected the down payments and deposited them in a separate bank account. Rents anticipated total $634,000.00.

In order to resolve this case, the Court must address four issues:

1. Is MBank entitled to the rents pursuant to the 1985 Order?

2. Are the Debtors entitled to the rents pursuant to 11 U.S.C. § 552(a)?

3. To what extent are prepetition liens on rent valid pursuant to Texas law?

4. Do the equities in this case require the Court to order a division of the rents pursuant to 11 U.S.C. § 552(b)?

### Issue One

■ Is MBank entitled to the rent proceeds pursuant to the March 15, 1985 Order because the terms of that Order are broad enough to include rent? It does appear that the terms of that Order are sufficiently broad to include rent. However, the Order specifically referred to the collateral as the "1985 Collateral." On page 5 of the Order, the Court stated that "the Debtors are authorized to obtain credit secured by the 1985 crops and the 1985 Collateral to the extent identified above for

the crop year 1985." Thus the lien granted by the March 15, 1985 Order extended only to assets acquired by the Debtor during the year 1985 and not to rents under leases executed in 1986.

### Issue Two

The Debtors contend that they are entitled to the rents pursuant to 11 U.S.C. § 552(a), which states:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

The secured creditors contend that their prepetition liens extend to rent pursuant to 11 U.S.C. § 552(b), which reads:

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, *rents*, or profits of such property, then such security interest extends to such proceeds, product, offspring, *rents*, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. [Emphasis added.]

■ The Debtors cite § 552(a) for the proposition that crops planted after the filing of a bankruptcy petition constitute after-acquired property and, thus, are not covered by prepetition liens. They assert that this rule should extend to "the equivalent" of crops and that these rents are the equivalent of crops. In support of their contention, the Debtors cite *In re Kruse*, 35 B.R. 958 (Bankr.Kan.1983) and *Hugo v. United States (In re Hugo)*, 50 B.R. 963

(Bankr.E.D.Mich.1985). However, these cases nowhere discuss postpetition equivalents of crops. The Court finds that postpetition rentals received for crops grown by others on the Debtors' land, whether paid in cash or paid as a percentage of the crop, are not the equivalent of crops grown on the property by the Debtors themselves.

While the Debtors argue that it is illogical to allow them the benefits of postpetition crops they planted, but to deny them the benefits of postpetition rentals for crops grown on their property, the distinction between the two situations is clear. Postpetition crops are produced as a result of capital and labor invested by the Debtors postpetition and clearly constitute after-acquired property. On the other hand, rents are specifically mentioned in § 552(b) and are acquired by the Debtors as a result of ownership of property upon which the creditor has a lien. Minimal activity is expended by the Debtors in order to generate the rents, and, under the "equities of the case" exception contained in § 552(b), a Court can allow the Debtors their expenses and taxes in connection with the production of that income.

Section 552 applies to all security interests, not just to security interests created under the Uniform Commercial Code. 11 U.S.C. § 101(43) defines a security interest to mean a lien created by an agreement. *See*, 4 *Collier on Bankruptcy* (15th ed.), ¶ 552.01 at p. 552–3.

The only case on point cited by the Debtors is an unpublished opinion by the prior Judge of this Court, the Honorable Bill H. Brister. *In re Billy Joe Hill d/b/a Bill Hill Farms*, No. 585–50164, August 28, 1985. In *Hill*, the Court points out that the contracts under which rents will be received did not exist on the date the Bankruptcy Petition was filed and continues "It is my notion that 'rents' fall into that same category of unencumbered property. The bank's lien cannot attach until the property comes into existence." Judge Brister cites no authority to support this conclusion and I respectfully disagree with it.

In the instant case, the secured creditors had valid prepetition liens on the lands involved. The Debtors received rents for the use of those lands. The reference to "rents" in § 552(b) leads this Court to the inescapable conclusion that the prepetition liens on rents are valid to the extent those liens are valid under state law.

### Issue Three

 To what extent are prepetition liens on rents valid under state law? Texas courts have followed the common law rule that an assignment of rents is not effective until the mortgagee obtains possession of the property or impounds the rents, secures the appointment of a receiver, or takes some similar action. *Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.)*, 723 F.2d 441, 443 (5th Cir.) *cert. denied*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984). Once a petition in bankruptcy is filed, a creditor must take some specific action in the Bankruptcy Court to recover the rents; merely filing a motion to be relieved from the automatic stay is insufficient. *Id. See also, Casbeer v. State Federal Savings & Loan Assn. (In re Casbeer )*, 793 F.2d 1436 (5th Cir.1986).

The Debtors argue that § 552(b) only applies to leases in existence on the date a Bankruptcy Petition is filed and that any leases entered into subsequent to the date of the filing of the Petition constitute after-acquired property under § 552(a). In the context of a farm Debtor, where the parties anticipate that the Debtor will grow crops on the land involved, such a rule would not create either a hardship or an undue benefit for the Debtor. In the case of an apartment project or an office building, such a rule would wreak havoc on what the creditor considered the principal source of collateral when he made the loan. Doubtless Congress had creditors in the latter situation in mind when it drafted § 552(b). The section makes no distinction between uses of collateral made by its owner. Thus, postpetition rentals, even rentals from leases entered into postpetition, are covered by the prepetition security agreement.

### Issue Four and Conclusion

When, as here, rents are specifically mentioned in the security agreement, it cannot be said that rents of farm property were not contemplated by the parties at the time the loans were made.

In the instant case, there are thirty separate leases, numerous lenders, and multiple liens on some of the properties. The facts and timing of the attempts by each lender to perfect its lien on rentals are different, the timing of the payments of rents on the various leases undoubtedly vary, and the priority of liens on those rents still remain to be determined. The parties presented only the threshold issues at the hearing on this matter; the presentation of the subsidiary issues was left to a later time.

Now that there is a ruling on these threshold issues, the Court will establish a discovery and trial schedule for the remaining issues, including whether the "equities of the case exception" contained in § 552(b) should be applied in this case.