**FINANCIAL SECURITY ASSURANCE, INC., Appellant,**

v.

**TOLLMAN–HUNDLEY DALTON, L.P., Appellee.**

**Civ. A. No. 4:93–cv–356–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

March 1, 1994.

---

James Norland Gorsline, Daniel James King, King & Spalding, Atlanta, GA, for appellant.

Karen Fagin White, William James Reedy, Small White & Marani, Atlanta, GA, for appellee.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Financial Security Assurance, Inc.'s appeal of the October 10, 1993 Order of the Bankruptcy Court, 162 B.R. 26. Jurisdiction is proper pursuant to 28 U.S.C. § 158(a).

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

In February 1989, Tollman–Hundley Dalton, L.P. ("THD"), which owned and operated a Holiday Inn in Dalton, Georgia ("Hotel"), borrowed $10,151,088.00 to refinance an existing loan on the Hotel. Financial Security Assurance, Inc. ("FSA") guaranteed the prepetition security agreement and later succeeded to all rights of the original lender. THD granted FSA a security interest in the Hotel real property and improvements, related tangible and intangible personal property, and all rents, issues, profits, revenues, accounts, and other rights associated with the Hotel and its operation. The parties agree that the security agreement was intended to cover all Hotel revenues. FSA now holds a first priority security interest is the proper-

ty. THD has also assigned all "income and benefits or every nature whatsoever, including, without limitation, all rents, issues, profits, and revenues derived from" the Hotel to FSA.

In October 1990, THD defaulted on its monthly payment to FSA. On February 25, 1991 FSA accelerated the payments due under the security agreement, revoked THD's license to collect rents, and filed an action in the Superior Court of Whitfield County, Georgia to obtain the appointment of a receiver to collect the Hotel revenues. On March 1, 1991, however, prior to the appointment of a receiver, THD filed a voluntary petition under Chapter 11 of the Bankruptcy Code, staying the action for appointment of a receiver.

THD operated the Hotel as a debtor-in-possession from March 1, 1991 through April 7, 1992, when FSA obtained relief from the automatic stay and foreclosed its interest in the Hotel. FSA contends that THD received between $3,000,000.00 and $4,000,000.00 in postpetition receipts from the operation of the Hotel. THD states that it has in its possession approximately $412,000.00 in revenues from the postpetition operation of the Hotel.

FSA contends that it is entitled to the postpetition revenues pursuant to section 552(b) of the Bankruptcy Code. THD, however, contends that the revenues are property of the estate pursuant to section 552(a) of the Code. The Bankruptcy Court held that FSA's security interest in the postpetition revenues was cut off by section 552(a), and that, because hotel revenues are not rents, profits, or proceeds under Georgia law, FSA's postpetition security interest was not saved by the exception found in section 552(b).

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158, a district court sits as an Appellate Tribunal and shall review the facts and findings of a bankruptcy court. A district court reviews findings of fact under the "clearly erroneous" standard. *Nordberg v. Arab Banking Corp. (In re Chase Sanborn Corp.)*, 904 F.2d 588,

593 (11th Cir.1990); Fed.R.Bankr.P. 8013. A finding of fact is clearly erroneous "if the record lacks substantial evidence to support it," *Thelma C. Raley, Inc. v. Kleppe*, 867 F.2d 1326, 1328 (11th Cir.1989), so that a court has the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). A district court reviews conclusions of law *de novo. Nordberg*, 904 F.2d at 593.

## III. DISCUSSION

### A. The Issue

The issue before the Court is whether, under section 552, FSA's first priority prepetition security interest in the Hotel real property and improvements, related tangible and intangible personal property, and all rents, issues, profits, revenues, accounts, and other rights associated with the Hotel and its operation, reaches the postpetition revenues generated by the Hotel.

FSA contends that its security interest does cover the Hotel revenues. FSA argues that federal law defines the terms "proceeds, product, offspring, rents, or profits," and that hotel revenues constitute rent, proceeds, or profits. Therefore, FSA claims that its prepetition security interest covers the revenues. Furthermore, FSA contends that even if state law defines the terms "proceeds, product, offspring, rents, or profits," its security interest still covers the revenues because the revenues constitute rent under Georgia law.

THD contends that FSA's security interest does not cover the revenues. THD argues that state law defines the terms "proceeds, product, offspring, rents, or profits," and that under state law the Hotel revenue does not constitute rent.

### B. The Statutory Framework

The code section at issue is section 552. Section 552 governs the effect of prepetition security interests on postpetition property. Section 552(a) provides the general rule that postpetition property of the debtor or estate is not subject to any lien resulting from any prepetition security agreement. *See* 11 U.S.C. § 552(a).

■ Section 552(b) provides an exception for liens resulting from prepetition security agreements which cover "proceeds, product, offspring, rents, or profits." It provides in relevant part:

if the debtor and an entity entered into a security agreement before the commencement of the case

and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case

to the extent provided by such security agreement and by applicable non-bankruptcy law....

11 U.S.C. § 552(b). It is FSA's burden to prove that the postpetition revenues constitute "proceeds, product, offspring, rents, or profits" under section 552(b). *See In re Green Corp.*, 154 B.R. 819, 822 (Bankr.D.Me. 1993); *In re Grassridge Ind., Inc.*, 78 B.R. 978, 980 (Bankr.W.D.Mo.1987).

### C. Governing Law

The Court must first decide whether federal or state law defines the terms "proceeds, product, offspring, rents, or profits." FSA admits that it is well established, under the principle set forth in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), that state law determines whether a party has a properly perfected security interest in rents. It argues, however, that federal law should define the terms "proceeds, product, offspring, rents, or profits" used in section 552(b).

FSA claims that the legislative history and the use of the same terms elsewhere in the Bankruptcy Code indicate that the terms should be construed broadly and generically. FSA states that Congress intended the terms to encompass all forms of derivative property to protect creditors holding security interests in revenues generated from various types of

rental property. Furthermore, FSA claims that the clear intent of the parties was for FSA's security interest to cover postpetition Hotel revenues, and that such intent mandates a broad interpretation of the terms "proceeds, product, offspring, rents, or profits."

Finally, FSA claims that defining the terms pursuant to state law will lead to anomalous and unfair results. FSA asserts that if state law defines the terms then creditors' security interests in hotel revenues will be treated differently than rental property revenues, and that creditors' security interest in "proceeds, product, offspring, rents, or profits" will be treated differently in and out of bankruptcy.

THD contends that state law should define the terms "proceeds, product, offspring, rents, or profits" used in section 552(b). THD argues that the plain language of section 552(b), the Supreme Court's decision in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), and the overwhelming weight of case law, make clear that state law defines the terms "proceeds, product, offspring, rents, or profits."

To determine the meaning of section 552(b) the Court must first look to the language of the code section itself. *See U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The language of section 552(b) makes clear that the prepetition security interest only reaches "proceeds, product, offspring, rents, or profits" to the extent provided by: (1) the security agreement; and (2) the applicable nonbankruptcy law.[1] That, however, does not answer the question of how, and to what extent, state law defines the terms at issue.

Thus, the Court turns to the Supreme Court's opinion in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In *Butner*, the debtor filed a petition under Chapter XI of the Bankruptcy Act of 1898. Butner held a second mortgage on some North Carolina real estate owned by

the debtor, but did not receive an express security interest in the rents earned by the property. Thereafter, the bankruptcy judge appointed an agent to collect the rents from the property and later allowed Butner to foreclose on the property. At the time of the foreclosure sale $163,000.00 in rents had been collected. Butner claimed that he had a security interest in the rents, but the bankruptcy judge held he did not because he had not taken the type of action necessary under North Carolina law to perfect his security interest in the rents.

On appeal, the District Court reversed the bankruptcy judge. The District Court held that Butner had taken action sufficiently similar to that required by state law to perfect his security interest in the rents. The Court of Appeals then reversed the District Court. The Court of Appeals held that because Butner had not taken the type of action required *to perfect his security interest in the rents* under North Carolina law he had no security interest in the rents.

The Supreme Court granted certiorari to resolve a split among the federal circuit courts over whether state law or equity governs whether a security interest in property extends to rents and profits derived from the property. The Court held that state law governs. The Court stated that "[p]roperty interests are created and defined by state law," and that absent a contrary federal interest, property interests should be analyzed the same in state and federal courts within a state. *Butner*, 440 U.S. at 55, 99 S.Ct. at 918. The Court observed that "[u]niform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id.*

■ The Court finds that *Butner* requires that state law define the terms "proceeds, product, offspring, rents, or profits" in section 552(b).[2] In *Butner*, the Supreme Court

[1]. The applicable nonbankruptcy law includes state law. *See* 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 552.02, at 552–8—552–10 (1993).

[2]. Although *Butner* addressed issues arising under the Bankruptcy Act of 1898, the principles stated in the opinion remain valid under the Bankruptcy Code. *See Barnhill v. Johnson*, —— U.S. ——, ——, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39, 46

made clear that state law should govern property interests to ensure uniform treatment of property interests within states. To that end, it is important that the legal definition of the terms "proceeds, product, offspring, rents, or profits" may differ in each state.[3] Thus, to ensure uniformity within each state, state law must define the terms.

The Court also notes that its holding that state law defines the terms "proceeds, product, offspring, rents, or profits" in section 552(b) is consistent with the vast majority of courts which have addressed the issue. Like this Court, these courts have found that state law defines the terms. *See e.g., Matter of T-H New Orleans Ltd. Partnership,* 10 F.3d 1099, 1104 (5th Cir.1993) (Louisiana law determines whether postpetition hotel revenues constitute rents); *In re Bering Trader, Inc.,* 944 F.2d 500, 502 (9th Cir.1991) (Washington law determines whether postpetition revenues from charter of vessel constitutes rents or an account); *In re Bumper Sales, Inc.,* 907 F.2d 1430, 1436–1437 (4th Cir.1990) (Virginia law determines whether postpetition inventory and accounts constitute proceeds); *In re Green Corp.,* 154 B.R. 819 (Bankr. D.Me.1993) (Maine law determines whether postpetition hotel revenues constitute rent). *See also* 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 552.02 at 552–8—552–10 (1993) (state law defines terms proceeds, product, offspring, rents, and profits in section 552(b)).

The Court recognizes that some courts have found that Congress intended courts to interpret the terms in section 552(b) broadly and generically to encompass all types of derivative property. *See Matter of T-H New Orleans Ltd. Partnership,* 10 F.3d at 1105; *In re Oliver,* 66 B.R. 426, 428 (Bankr. N.D.Tex.1986). These pronouncements, however, are *dicta,* as both of these courts looked to the applicable state law to interpret the terms. *See Matter of T-H New Orleans Ltd. Partnership,* 10 F.3d at 1104; *In re*

*Oliver,* 66 B.R. at 428–429. Once a court determines that state law governs the interpretation of the terms, only state law is relevant in interpreting the terms. Therefore, any perceived congressional intent to interpret the terms broadly is irrelevant. Furthermore, this Court agrees with the Fourth Circuit, that to the extent there is a conflict between the language in section 552(b) and the legislative history, section 552(b)'s express reference to "nonbankruptcy law" should take priority over isolated pieces of legislative history. *See In re Bumper Sales, Inc.,* 907 F.2d 1430, 1437 (4th Cir. 1990).

The Court also recognizes that the language "proceeds, product, offspring, rents, or profits" is used elsewhere in the Bankruptcy Code, and is interpreted broadly. Section 541(a)(6) uses the language to help define property of the estate, and is interpreted broadly. *See* 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 541.01 (1993). Section 543 uses the language to define what property a custodian must turn over to a trustee, and FSA contends that Congress surely intended for a custodian to turn over hotel revenues to a trustee. Therefore, FSA contends the same language should also be interpreted broadly in section 552(b).

The Court cannot agree. The language of section 552(b) makes clear that the prepetition security interest only reaches "proceeds, product, offspring, rents, or profits" *to the extent provided by:* (1) *the security agreement;* and (2) *the applicable nonbankruptcy law.* This modifying language requires that the terms be interpreted under state law. Thus, the explicit modifying language and the need for uniform treatment of property interests within each state outweighs the appeal of uniform treatment of the terms within the Bankruptcy Code.

The Court, however, does agree with FSA that the intent of the parties is relevant. *See In re Miami Center Associates, Ltd.,* 144

---

(1992) (in absence of controlling federal law interests in property are creatures of state law); *Matter of Village Prop., Ltd,* 723 F.2d 441, 444 (5th Cir.), *cert. denied, Wolters Village Ltd. v. Village Prop., Ltd.,* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984) (*Butner* emerged "unscathed by the new Bankruptcy Code").

**3.** The Court recognizes that nearly every state has adopted the Uniform Commercial Code ("UCC"). However, each state may amend and interpret the UCC as it wishes, which may lead to different results in each state.

704

B.R. 937, 941 (Bankr.S.D.Fla.1992); *In re S.F. Drake Hotel Associates,* 131 B.R. 156, 161 (Bankr.N.D.Cal.1991), *aff'd,* 147 B.R. 538 (N.D.Cal.1992). Section 552(b) states explicitly that the prepetition security interests reach "proceeds, product, offspring, rents, or profits" to the extent provided by the security agreement *and the applicable nonbankruptcy law.* However, if applicable nonbankruptcy law and the parties intend conflict, then state law controls. The parties are not free to disregard state law. *See In re Green Corp.,* 154 B.R. at 826. The need for uniform treatment of security interests within each state requires that state law ultimately govern the interpretation of the security interest.

The Court also agrees with FSA that there is no evidence that Congress specifically intended for courts to treat security interests in hotel revenues differently than security interests in apartment or office building rents. *See Matter of T–H New Orleans Ltd. Partnership,* 10 F.3d at 1105; *In re S.F. Drake Hotel Associates,* 131 B.R. at 160. Furthermore, the Court recognizes that from a commercial point of view postpetition revenue generated from the operation of a hotel, office building, or apartment building should be treated the same. In valuing the buildings, developers, lenders, and lendees treat all of these buildings the same; all look to the likely revenue stream the use of the building will produce over its useful life. *See In re S.F. Drake Hotel Associates,* 131 B.R. at 160; R. Freyermuth, *Of Hotel Revenues, Rents, and Formalism in the Bankruptcy Courts: Implications for Reforming Commercial Real Estate Finance,* 40 U.C.L.A.L.Rev. 1461, 1499 (1993).

Perceived Congressional intent and commercial policy, however, do not govern the interpretation of the terms "proceeds, product, offspring, rents, or profits." Instead, state law governs the interpretation of the terms to ensure uniform treatment of property interests within each state.

Finally, the Court rejects FSA's assertion that if the Court holds that state law defines the terms in section 552(b), then security interests in hotel revenues will be treated differently in and out of bankruptcy.

In Georgia, a mortgagee with a security interest in rents is not entitled to receive the rents until it takes possession of and complete control over the land or rents. *Matter of Keller,* 150 B.R. 835 (Bankr.N.D.Ga.1993); *In re Polo Club Apartment Associates Ltd.,* 150 B.R. 840 (Bankr.N.D.Ga.1993). Here, FSA did not take possession of the property or control over the rents until it persuaded the Bankruptcy Court to lift the stay and FSA then foreclosed on the land. Before that, FSA had only unsuccessfully attempted to have a receiver appointed to collect the hotel revenues. Thus, in or out of bankruptcy, under Georgia law, FSA was not entitled to the rents prior to the time it foreclosed on the land.

Therefore, security interests in hotel revenues are treated the same in and out of bankruptcy. In both situations, if the mortgagee has not taken possession and control of the land or rents, it is not entitled to the rents; but if the mortgagee has taken possession and control of the land or rents, it is entitled to the rents.

**D. Georgia Law**

As the Court finds that state law defines the terms rents, proceeds, and profits in section 552(b), the Court must now determine whether the postpetition Hotel revenue constitutes rents, proceeds, or profits under Georgia law.

**1. Rent**

FSA contends that the Hotel revenues collected by THD while it operated the Hotel postpetition constitute rent under Georgia law. FSA argues that Georgia court decisions and statutes employ the term rent broadly. Furthermore, FSA claims that various authorities define rent broadly. Finally, FSA states that Georgia's common law and statutory distinction between innkeepers and landlords does not limit the definition of rent to landlord-tenant relationships.

THD contends that the Hotel revenues do not constitute rent. THD states that Georgia's common law distinguishes the landlord-tenant relationship from the innkeeper-guest relationship, and provides that tenants pay

rent, while hotel guests pay fees. THD also states that Georgia's current Innkeeper Statute distinguishes innkeeper-guest and landlord-tenant relationships.

The Court finds that under section 552 and Georgia law FSA's first priority prepetition security interest in the Hotel revenues does not cover postpetition Hotel revenues.

■ First, the Court finds that FSA is not entitled to the postpetition revenues, even assuming that the revenues constitute rents under Georgia law. As discussed, Georgia law requires that for a mortgagee to be entitled to rents, the mortgagee must take possession of and complete control over the land or rents. *Matter of Keller,* 150 B.R. 835 (Bankr.N.D.Ga.1993); *In re Polo Club Apartment Associates Ltd.,* 150 B.R. 840 (Bankr.N.D.Ga.1993). Here, FSA did not take possession of the land or control over the rents until it persuaded the Bankruptcy Court to lift the stay and FSA then foreclosed on the land. Before that, FSA had only unsuccessfully attempted to have a receiver appointed to collect the hotel revenues. Thus, under Georgia law FSA was not entitled to the revenues prior to the time it foreclosed on the land.

■ Second, the Court finds that the Hotel revenues do not constitute rents under Georgia law. No Georgia case or statute deals directly with the issue of whether postpetition hotel revenue constitute rents under section 552(b) of the Bankruptcy Code. The different treatment of landlords and innkeepers in Georgia law, however, is highly relevant to this question. Since the early common law, Georgia courts have distinguished innkeepers from landlords. *See Bonner v. Welborn,* 7 Ga. 296 (1849). The Georgia Supreme Court in *Bonner* stated that innkeepers provide "entertainment" services to travelers for a brief period of time for a "fee," while landlords provide lodgings to boarders for a "season" for "rent." *Id.* at 307. The *Bonner* court recognized the fun-damental differences between landlords and innkeepers. At common law, a tenant acquired a *possessory interest in land,* generally for a comparatively longer period of time; while guests acquired a *license to use land,* generally for a short period of time. *See* 49 Am.Jur.2d Landlord and Tenant § 6 at 47 (1964). Furthermore, this distinction served as a basis for assigning different rights, duties, and liabilities to innkeepers and landlords. *See Murchison v. Sergent,* 69 Ga. 206 (1882). For example, an innkeeper was a professional bailee, who was responsible for protecting a guest and a guest's property. *See Coskery v. Nagle,* 83 Ga. 696, 10 S.E. 491 (1889); *Murchison v. Sergent,* 69 Ga. 206 (1882). A landlord had no such duty.

Georgia's current statutory scheme for the regulation of the hotel industry continues to reflect the different treatment of innkeepers and landlords. For example, the Georgia's Innkeeper Statute defines a guest and an inn as follows:

(1) "Guest" means a person who pays a *fee* to the *keeper of an inn* for the purpose of *entertainment* at that inn.

(2) "Inn" means all taverns, hotels, and houses of *public general entertainment* for *guests.*

O.C.G.A. § 43-21-1 (emphasis added). Furthermore, the Innkeeper Statute provides that an innkeeper may terminate a guest's "occupancy" for "failure to pay *sums due.*" O.C.G.A. 43-21-3.1. Finally, the Statute makes it unlawful for persons to "occupy" rooms for immoral purposes. *See* O.C.G.A. 43-21-61. Thus, guests "occupy" rooms for a "fee"; they do not pay rent.[4]

The statutory definition of rent in the Georgia Marketing Act of 1981 also reflects the different treatment of landlords and innkeepers. The Georgia Marketing Act defines rent as "the creation of a written instrument (a rental agreement) the terms and condition of which create *the relationship of landlord and tenant.*" O.C.G.A. § 2-10-52

---

4. The Court recognizes that under Georgia's Innkeeper Statute the term "guest" includes persons who eat, drink and are entertained at inns and taverns, but do not obtain a room at an inn. *See* O.C.G.A. § 43-21-1(2). Thus, it can be argued that the statute provides that a "guest" pays a "fee" because of the broader definition of "guest." The Court, however, finds it more likely that the statute provides that a "guest" pays a "fee" at least in part because the Georgia legislature recognized the distinction between a tenant and a guest.

(emphasis added).[5] Thus, only tenants, who have a possessory interest in land, pay rent.

Furthermore, Georgia's statutory treatment of liens for innkeepers and landlords reflects the different treatment of innkeepers and landlords. Georgia law allows both innkeepers and landlords to obtain liens on personal property for amounts due from their respective guests or tenants. *See* O.C.G.A. §§ 44–7–70 to 44–7–82 and 44–14–341 (landlord); 43–21–5—43–21–6 (innkeeper). However, Georgia law provides that an innkeeper's lien for "food, lodging, or other accommodation" is superior to other liens *except* "... special liens of landlords for rent...." O.C.G.A. 43–21–5.

Therefore, the Court finds that Georgia law distinguishes the landlord-tenant relationship from the innkeeper-guest relationship. Reflecting this difference, the Court finds that Georgia courts would treat the payment to a hotel for the use of a room as a fee and the payment to a landlord for possession of land as rent. Thus, the Court concludes that Georgia courts would not treat hotel revenues as rents as the term is used in section 552(b) of the Bankruptcy Code.

The Court also notes that Georgia's recognition of the unique property interest known as a usufruct does not alter the distinction between the innkeeper-guest relationship and the landlord-tenant relationship. Usufructs are rights which generally arise out of landlord-tenant relationships, where tenants hold a lesser possessory interest in real estate than an estate for years. *See Roe v.*

*Doe,* 246 Ga. 138, 268 S.E.2d 901 (1980); *Martin v. Heard,* 239 Ga. 816, 818–819, 238 S.E.2d 899 (1977). *But see Midtown Chain Hotels Company v. Bender,* 77 Ga.App. 723, 727, 49 S.E.2d 779 (1948) (holder of usufruct only has right to use property). The tenant in a usufruct obtains the right "to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor." O.C.G.A. § 44–7–1(a). In Georgia, all realty rented for a period of less than five years is deemed to convey only a usufruct unless the parties expressly agree otherwise. O.C.G.A. § 44–7–1(b). Thus, unlike a hotel guest, but like a tenant, a holder of a usufruct, obtains a possessory interest in land.

Furthermore, even construing usufructs broadly, they are still distinguished from the use of hotel rooms. Under Georgia law a usufruct is not a taxable interest. *Macon–Bibb County v. Atlantic S.E. Airlines,* 262 Ga. 119, 122, 414 S.E.2d 635 (1992). Georgia, however, levies both a sales and use tax and an excise tax on hotel occupancy. *See* O.C.G.A. §§ 48–8–30 and 48–8–51. Thus, the Court finds that obtaining a hotel room does not create a usufruct as a usufruct involves a possessory interest in land, arises in the landlord-tenant relationship, and is not taxable.

The Court recognizes that the Georgia courts and statutes have used rent more broadly in various contexts.[6] The Court also recognizes that some authorities, including the proposed Restatement (Third) of Property and Black's Law Dictionary, define rent more broadly.[7]

---

**5.** The Court recognizes that this definition is contained in the Georgia Marketing Act regulating farmer's markets, not in the property section of the Code. The Court, however, finds the definition provides evidence of the Georgia legislature's recognition of the common law's treatment of rent as something paid by a tenant with a possessory interest in land.

**6.** *See e.g.,* O.C.G.A. § 11–2A–101 *et seq.* (repeatedly uses term rent in connection with lease of goods); O.C.G.A. § 44–12–209(a) (uses rent in connection with lease of safe deposit boxes); O.C.G.A. § 40–9–102 (uses rent in connection with lease of storage facilities); *Turner Communications Corp. v. Chilivis,* 239 Ga. 91, 236 S.E.2d 251 (1977) (held that leasing of video tapes to television stations constituted rentals.) *Atlanta Americana Motor Hotel Corp. v. Underco-*

*fler,* 222 Ga. 295, 149 S.E.2d 691 (1966) (stated that "the lease, *rental* or charge to transients for the *use* of [hotel] rooms constitutes the lease, *rental* or charge for real property or its use.") *Salmon v. Commercial Union Insurance Co.,* 154 Ga.App. 8, 267 S.E.2d 273 (1980) (court employed Webster's definition of rent—"the return made by the tenant or occupant of land ... to the owner for the use thereof ..."—in insurance contract dispute).

**7.** *See Restatement (Third) of Property Mortgages,* § 4.2(a) (Tentative Draft No. 2) (approved at American Law Institute meeting on May 12–15, 1992) (defines rent as "the proceeds payable by a lessee, licensee, or other persons for the right to possess, use, or occupy the real property of another."); *Black's Law Dictionary* (5th ed. 1979) (defines "rent" as the "consideration paid for use

The Court, however, finds that it must look to Georgia law, and that Georgia's distinction between innkeepers and landlords better indicates how Georgia courts would define rent as used in section 552(b) of the Bankruptcy Code. Section 552(b) deals with security interests in property. Georgia law distinguishes between the innkeeper-guest and landlord-tenant relationships based on the different property interests in land each entails. A guest has only the right to use hotel property for a certain period of time, while a tenant has a possessory interest in land. Thus, this Court finds that how Georgia law defines the property interest a guest has in a hotel room and the property interest a tenant has in real property better reflect how Georgia courts would define rents as used in section 552(b) of the Bankruptcy Code, then how various and assorted Georgia cases and statutory sections unrelated to the type of interest a person has in the occupancy of a hotel room use the term rent.

Furthermore, the Court's finding that hotel revenues do not constitute rents because of the distinction between tenants and guests is consistent with the approach of the majority of courts which have addressed this issue. These courts, analyzing the law of various states, found that each state's respective common law provided that tenants paid rent for a possessory interest in land while guests paid a fee for the temporary use of an inn for lodging. *See e.g., In re Green Corp.*, 154 B.R. at 823–824 (Maine law); *In re Chesterfield Century City Ltd. Partnership*, Civ. No. 2–92–119–GEB, 1992 WL 471706 (E.D.Cal. filed August 18, 1992) (California law); *In re Nendels–Medford Joint Venture*, 127 B.R. 658 (Bankr.D.Or.1991) (Oregon law); *Mid–City Hotel Associates*, 114 B.R. 634, 640–641 (Bankr.D.Minn.1991) (Minnesota law).

Moreover, the Court finds that Georgia courts would not treat hotel revenue as rents because hotel revenues are more like an account than rent. Under Georgia law, an account is "any right to payment for goods sold or leased or *for services rendered* which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." O.C.G.A. § 11–9–106 (emphasis added). Rent, however, as discussed, is payment for a possessory interest in land.

Hotel revenues are more like an account than rent because hotel revenues are generated from the provision of services, not from the bare grant of a possessory interest in land. A hotel provides services for guests. Hotels provide a variety of services including a room, room service, maid service, a restaurant, wake up calls, a concierge, and other services. Landlords generally do not. Landlords provide a tenant a possessory interest in land.

Admittedly, the dichotomy is not exact. Some hotels provide only minimal services, while some landlords do provide services to tenants. The Court, however, concludes, that on balance this dichotomy is further evidence that hotel revenues are not rents, but an account. This conclusion is consistent with the majority of court which have addressed this issue. *See e.g., In re Miami Center Associates, Ltd.*, 144 B.R. at 941; *In re Majestic Motel Associates, Inc.*, 131 B.R. 523 (Bankr.D.Me.1991); *In re Shore Haven Motor Inn, Inc.*, 124 B.R. 617 (Bankr. S.D.Fla.1991); *In re Vickers, Ltd.*, 111 B.R. 332 (D.Colo.1990) *In re Ashkenazy Enterprises, Inc.*, 94 B.R. 645 (Bankr.C.D.Cal. 1986); *In re Kearney Hotel Partners*, 92 B.R. 95 (Bankr.S.D.N.Y.1988). *But See In re S.F. Drake Hotel Associates*, 131 B.R. at 158–161 (room charges are more like rent than an account).

## 2. Profits

 The Court finds that room charges do not constitute profits because FSA has come forward with no evidence that hotel revenues constitutes profits under Georgia law. FSA has offered evidence that profits include hotel revenues under the laws of other states but not the law of Georgia. Thus, FSA has not met its burden of establishing its security interest.

or occupation of property" or more broadly "for the use of any property land, buildings, equipment, etc."). *See also* R. Freyermuth, *Of Hotel Revenues, Rents, and Formalism in the Bankrupt-cy Courts: Implications for Reforming Commercial Real Estate Finance,* 40 U.C.L.A.L.Rev. 1461, 1493–1499 (1993) (argues that holder of license to occupy land pays rent).

**708**

Furthermore, the majority of courts from other jurisdictions have found that the term profits does not include hotel revenues, but refers to the money generated from the sale of real property to which a security interest was attached and perfected prepetition. *See e.g., In re Green Corp.,* 154 B.R. at 825 (court determined that hotel revenues flow from the operation of the business and not from the real estate); *In re Chesterfield Century City Ltd. Partnership,* Civ. No. 2–92–119–GEB, at 6 n. 5, 1992 WL 471706, at *3 n. 5 (E.D.Cal. filed August 18, 1992); *In re General Associated Investors Limited Partnership,* 150 B.R. 756, 761 (Bankr.D.Az.1993); *In re Northview Corp.,* 130 B.R. 543, 548 (9th Cir. BAP 1991) (profits refer to sale of real property); *In re Shore Haven Motor Inn, Inc.,* 124 B.R. 617; *In re Investment Hotel Properties, Ltd.,* 109 B.R. 990, 995–996 (Bankr. D.Co.1990) (proceeds refers to sale of personal property; profits refers to sale of real property). *But see In re Mid–City Associates,* 114 B.R. 634 (Bankr.D.Minn.1990). Here, FSA obtained the profits from the Hotel when it foreclosed on the Hotel and sold it.

### 3. Proceeds

 The Court finds that FSA is not entitled to the Hotel revenues even assuming they constitute proceeds because the security agreement does not provide that FSA has a security interest in the proceeds of the Hotel. Furthermore, the Court finds that hotel revenues do not constitute proceeds. FSA has come forward with no evidence that hotel revenues constitute proceeds under Georgia law. Georgia law defines proceeds as "whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." O.C.G.A. § 11–9–306. The Hotel revenues came from the operation of the Hotel, however, not from the sale of the Hotel. Thus, the revenues do not constitute proceeds. *See In re Green Corp.,* 154 B.R. at 825 (hotel revenues are not proceeds because they are not generated from the sale of the underlying collateral); *In re Northview Corp.,* 130 B.R. at 548 (proceeds refers to secured prepetition personal property which is converted into some other property); *In re Investment Hotel Properties, Ltd.,* 109 B.R.

990, 995–996 (Bankr.D.Co.1990) (proceeds refers to sale of personal property). *But see In re Miami Center Associates, Ltd.,* 144 B.R. 937 (court found revenue from room charges constitutes proceeds because revenue derives from property, not services).

### IV. CONCLUSION

 The Court recognizes that, based on commercial practices and a broader definition of rent, some authorities urge that security interests in hotel revenues be treated as rents. The Supreme Court, however, has made clear that state law governs the creation and definition of property interests. Thus, this Court must look to the law of Georgia to determine whether hotel revenues constitute rent. Doing so, the Court finds that under Georgia law, hotel revenues do not constitute rent, proceeds, or profits.

Accordingly, the Court **AFFIRMS** the October 10, 1993 Order of the Bankruptcy Court.

IT IS SO ORDERED.